## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

**ANTHONY WRIGHT, Individually and** on behalf of all others similarly situated,

Plaintiff,

v.

**WASTE PRO USA, INC., and WASTE PRO OF FLORIDA, INC.,**

Defendants.

CASE NO. _____

**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

**JURY TRIAL DEMANDED**

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiff, Anthony Wright, individually and on behalf of all other similarly situated individuals (collectively, "Plaintiffs"), by and through undersigned counsel, sue Defendants Waste Pro USA, Inc., and Waste Pro of Florida, Inc., (collectively, "Waste Pro") on a collective basis pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

## INTRODUCTION

1.     The FLSA is designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202(a). To achieve its purposes, the FLSA requires three things. First, the FLSA requires payment of minimum wages. 29 U.S.C. § 206(a). Second, the FLSA requires overtime pay for covered employers whose employees work in excess of 40 hours per workweek. 29 U.S.C. 207(a). And third, the FLSA establishes minimum recordkeeping requirements for covered employers. 29 U.S.C. § 211(a); 29 U.S.C § 516.2(a)(7).

2.     Plaintiff and other current and former similarly situated employees are Waste Disposal Drivers for the Defendants who were paid on a purported job/day rate for work

1

performed. Due to Defendants' company-wide policies and procedures, Plaintiffs were deprived of wages for hours actually worked. Specifically, Defendants did not pay a true day rate for any and all hours worked in a given day, but placed limitations on the number of hours worked before the "day rate" was paid. Further, Defendants also coupled the day rate with "other forms of compensation." Therefore, Defendants violated the FLSA in both their calculation of the prevailing hour rate and only paying Plaintiffs "half-time" for all hours worked over forty (40) in a given workweek.

3.      Additionally, Plaintiffs, and others who were similarly situated, were deprived of wages for hours actually worked by the Defendants' policy to encourage and require them to perform pre-shift and post-shift duties while not clocked in. Defendants also automatically deducted thirty (30) minutes for lunch breaks that Defendants knew Plaintiff, and others similarly situated, regularly worked through.

4.      Plaintiff Wright, along with two other drivers from South Carolina and North Carolina, originally filed a Class / Collective Action Complaint in the District of South Carolina to vindicate their FLSA rights against Defendants and two other Waste Pro entities on October 2, 2017 and later amended on October 31, 2017 and December 5, 2017. *See Anthony Wright, Daniel Hansen, and Kenneth Privette v. Waste Pro USA, Inc., Waste Pro of Florida, Inc., Waste Pro of South Carolina, Inc., and Waste Pro of North Carolina, Inc.*, Case No. 2:17-cv-2654-DCN (United States District Court, District of South Carolina, D.E. 1, 5 and 30-2) (the "South Carolina Action").

5.      Plaintiff Wright originally filed his consent to join the South Carolina Action on October 2, 2017.

6.      Numerous other drivers from Florida also filed consents to join the South Carolina Action over the last two years.

7.      On July 25, 2019, after significant motion practice between the parties in the South Carolina Action, the District of South Carolina dismissed Waste Pro USA, Inc., and Waste Pro of

Florida, Inc., as well as the driver plaintiffs who worked for those entities in Florida, for lack of personal jurisdiction. Wright and those opt-in plaintiffs who originally joined the South Carolina Action against Defendants now file and join this subsequent, continuing action to pursue their FLSA rights against Waste Pro USA, Inc., and Waste Pro of Florida, Inc.

8.     The FLSA claims of Wright and those opt-in plaintiffs who originally joined the South Carolina Action against Defendants have been tolled as a result of joining the South Carolina action.[1]

9.     Plaintiff, Anthony Wright, now brings this action individually and on behalf of all other similarly situated current and former non-exempt Waste Disposal Drivers who were paid a day rate and who have been employed by Waste Pro ("Plaintiffs" or "Putative Class Members") throughout Florida, at any time from August 12, 2016 (or from three years before a Putative Class Member filed a consent to join in the South Carolina Action) through the final disposition of this matter, and have timely filed consent forms to join this collective action or the South Carolina Action.  These class members should be informed of the pendency of this action and apprised of their rights.

## THE PARTIES

10.     Plaintiff Wright is an individual residing in Pembroke Pines, Broward County, Florida and worked at Waste Pro's facility in Pembroke Pines, Florida within the relevant three-year period.  Plaintiff Wright's written consent to be a plaintiff in this action to continue his case against Waste Pro is attached hereto as Exhibit "A."[2]

11.     The Putative Class Members include all of Waste Pro's non-exempt Waste Disposal

---

[1] Plaintiff intends to seek equitable tolling of his claims, and the claims of all other Florida drivers who previously opted into the South Carolina Action

[2] Since Defendants are joint employers under the FLSA as described below, Plaintiffs' consents to join give their consent to bring this action against all Defendants listed above.

Drivers throughout Florida who performed the same or similar work as Plaintiff Wright, and were subjected to the same or similar payment policies as Plaintiff.

12.     Defendant Waste Pro USA, Inc. ("Waste Pro USA") is a Florida Corporation. Defendant Waste Pro USA is a covered employer under the FLSA and acted as such in relation to Plaintiff and the Putative Class Members.

13.     Defendant Waste Pro of Florida, Inc. ("Waste Pro Florida") is a Florida Corporation. Defendant Waste Pro Florida is a covered employer under the FLSA and acted as such in relation to Plaintiff and the Putative Class Members.

## SUBJECT MATTER JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 et. seq.

15.     This Court has general and specific personal jurisdiction over Waste Pro because the cause of action arose within this District as a result of Waste Pro's conduct within this District and because Waste Pro is headquartered in Florida and organized under Florida law.

16.     Venue is proper in this District because Plaintiff Wright performed his work for Defendants within this District.

17.     Specifically, Waste Pro has maintained a working presence throughout Broward County, Florida.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FLSA COVERAGE

19.     At all material times, Defendants have been employers within the meaning of section 203(d) of the FLSA, which is defined to include any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).

20.     At all material times, Defendants have each been an enterprise in commerce or in the

production of goods for commerce within the meaning of section 203(s)(l) of the FLSA because Defendants have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

21.     At all material times, Plaintiffs are (or were) employees who engaged in commerce or in the production of goods for commerce as required by sections 206 and 207 of the FLSA. 29 U.S.C. §§ 206–07.

22.     At all material times, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard of $500,000.00.

23.     During Plaintiffs' employment, Defendants employed at least two employees who handled goods, materials and supplies which travelled in interstate commerce, such as the waste disposal trucks and other items used to run the business.

24.     Therefore, at all material times relevant to this action, Defendants Waste Pro USA and Waste Pro Florida were an enterprise covered by the FLSA, and as defined by 29 U.S.C. §§ 203(r) and 203(s).

## **WAGE VIOLATIONS**

25.     Waste Pro violated and continues to violate the FLSA by failing to pay Plaintiff and the Putative Class Members time and one-half for each hour worked in excess of 40 hours per workweek.

26.     Further, Waste Pro has improperly calculated Plaintiff and the Putative Class Members' regular rate resulting in further miscalculation of Plaintiff and the Putative Class Members' overtime pay. Specifically, Plaintiff and the Putative Class Members should have received overtime compensation at a rate not less than one and one-half times their true regular rate.

27.     Plaintiff and the Putative Class Members were (and continue to be) paid under a purported day rate plan—that is, they were supposed to be paid for each day worked regardless of the number of hours worked each day. *See* 29 C.F.R. § 778.112.

28.     Waste Pro violated the day rate regulation in a number of different ways. Specifically, Plaintiff and the Putative Class Members were compensated by Waste Pro with a purported day rate as well as other forms of compensation. These other forms of compensation are not in compliance with the day rate provision of 29 C.F.R. § 778.112 and ultimately result in a miscalculation of Plaintiff and the Putative Class Members' regular rate and resulting overtime compensation. These other forms of compensation (helper pay and safety bonuses) may vary by name and amount, but nevertheless have the same overall effect of invalidating Waste Pro's attempt to categorize and compensate Plaintiff and the Putative Class Members under the day rate provision permitted by 29 C.F.R. § 778.112.

29.     Additionally, Plaintiff and the Putative Class Members did not receive their full day rate if they did not work a full day. This is a blatant violation of the day rate provision of 29 C.F.R. § 778.112. Indeed, a day rate plan can only be valid if an employee is paid a flat sum for a day's work *without regard to the number of hours worked in the day*. 29 C.F.R. § 778.112 (emphasis added). Because Plaintiff and the Putative Class Members are not paid a flat sum for a day's work without regard to the number of hours worked in the day, they are not paid under a true "day rate" plan and Waste Pro cannot avail itself of such a pay system.

30.     Waste Pro also violated and continues to violate the FLSA by permitting and encouraging Plaintiff and the Putative Class Members to perform pre-trip and post-trip work duties off the clock—that is, work without pay.

31.     And lastly, Waste Pro violated and continues to violate the FLSA by deducting 30-minute meal periods from Plaintiff and the Putative Class Members' daily hours worked, despite knowing that Plaintiff and the Putative Class Members routinely worked throughout their designated 30-minute meal periods.

32.     At all times relevant to this action, Defendants failed to comply with the FLSA

because Plaintiff and the Putative Class Members performed services for Defendants for which no provisions were made by Defendants to properly pay Plaintiff, and those similarly situated, for all hours worked or at the correct prevailing rate.

## COLLECTIVE ACTION ALLEGATIONS

33.     Plaintiff brings this action as a collective action on behalf of a class of individuals similarly situated.   Specifically, Plaintiff brings these claims under the Fair Labor Standards Act as a collective action and will request the Court to grant conditional certification under 29 U.S.C. § 216(b), and to order notices to potential opt-in individuals who are or were employed by Defendants as Waste Disposal Drivers within three (3) years prior to the commencement of this lawsuit in Florida (the "FLSA Class").

34.     Potential opt-in members of the collective action are similarly situated to Plaintiff. They all held the same job positions and had substantially similar job requirements and pay provisions. They are or were subject to the same common practices, policies, and plans of Defendants. They all suffered damages in the nature of lost overtime and other wages resulting from Defendants' wrongful conduct.

## STATEMENT OF FACTS

**A.     Waste Pro Jointly Employs Their Drivers through Waste Pro USA and Waste Pro Florida**

35.     Waste Pro provides waste disposal and recycling services to residential and commercial clients throughout the South Eastern United States.  *See* www.wasteprousa.com.

36.     Upon information and belief, Defendants operate the Waste Pro business out of their common headquarters in Longwood, Florida.

37.     Defendant Waste Pro USA purports to be a mere holding company for other Waste Pro entities, such as Waste Pro Florida.

38.     Upon information and belief, Defendants utilize different named entities in different

states to operate their Waste Pro locations and services.

39.     However, these entities are operated out of Waste Pro's headquarters in Longwood, Florida and have common officers. *See* Composite Exhibit "B" attached hereto of various corporate filings for Defendants.

40.     Indeed, on the Waste Pro website which advertises and acknowledges Waste Pro's collective services across all of its entities, Waste Pro currently operates from more than 75 locations in Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Tennessee, and North and South Carolina.  *See* www.wasteprousa.com/the-waste-pro-way/.

41.     Waste Pro's website does not differentiate between different Waste Pro entities, but promotes Waste Pro's services as one common business purpose across the states it services.

42.     Waste Pro's website lists each of its locations it operates in multiple different states and does not differentiate between which entity operates that location. *See* www.wasteprousa.com/find-your-city/.

43.     Even when clicking on an individual location, at the bottom of the webpage Waste pro's website references its corporate headquarters in Longwood, Florida. *See, e.g.,* www.wasteprousa.com/office/beaufort/.

44.     Upon information and belief, Waste Pro's business is a centralized, top-down operation controlled by Defendants.

45.     Upon information and belief, there is common ownership between Waste Pro entities.

46.     Waste Pro's website states that John Jennings is the "founder and visionary" behind Waste Pro and again touts its operations in nine different states. *See* www.wasteprousa.com/leadership/.

47.     Upon information and belief, Defendants jointly determine, share or allocate

responsibility for payroll matters.

48.     Upon information and belief, Defendants jointly determine, share or allocate responsibility for workers' compensation insurance matters.

49.     Upon information and belief, Defendants jointly determine, share or allocate responsibility for payroll tax matters.

50.     Upon information and belief, Defendants jointly determine, share or allocate responsibility for human resources matters, including but not limited to the hiring and firing of employees.

51.     For example, upon information and belief, Waste Pro utilized one law firm to audit its payroll practices for Waste Pro collectively. *See* Audit attached as Exhibit "C" produced in another FLSA matter where Waste Pro was a defendant.

52.     As a second example, Waste Pro advertises its Florida job openings through Waste Pro USA. *See* https://recruiting.adp.com/srccar/public/RTI.home?c=1080941&d=External-WastePro (last visited August 8, 2019).

53.     Upon information and belief, Defendants jointly determine, share or allocate responsibility for marketing/advertising matters.

54.     Upon information and belief, Defendants jointly determine, share, direct or allocate employees between the entities.

55.     For example, Russell Mackie, whom Defendants previously submitted an affidavit from in the predecessor South Carolina Action (D.E. 17-2), declared himself to be an employee of Waste Pro of Florida, Inc. (*see* Exhibit D attached hereto), while being listed on Waste Pro USA's website as part of their leadership team. *See* www.wasteprousa.com/leadership/.

56.     It is clear that Waste Pro operates its locations in different states, including Florida, as one common business enterprise with a common business purpose of providing waste disposal

and recycling services to its clients in these different states.

57.     On information and belief Waste Pro USA and Waste Pro Florida acted in all respects material to this action as the agent of the other, carried out a joint scheme, business plan or policy in material respects hereto, and the acts of Waste Pro USA and Waste Pro Florida are legally attributable to each other.

58.     The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' business or affairs and with the authorization of Defendants.

59.     Defendants agreed to allocate responsibility for, or otherwise codetermined key terms and conditions of the Plaintiff's and Putative Class Members' work and jointly administered training, job duties, and job assignment in Florida.  The entities combined influence over the terms and conditions of the Plaintiff's and the Putative Class Members' employment renders the Plaintiff and Putative Class Members employees of both Defendants.

60.     These Defendant entities directly or indirectly acted in the interest of an employer toward Plaintiff and other similarly situated employees, including without limitation directly or indirectly controlling the terms and conditions of employment and compensation of Plaintiff and others similarly situated.

61.     Defendants, Waste Pro USA and Waste Pro Florida, and each of their respective parents, divisions, subsidiaries or affiliates, however constituted, were joint employers of Plaintiff and other similarly situated drivers in their respective territory or territories because each, respective parent, division, subsidiary or affiliate acted directly or indirectly in the interest of the other in relation to Plaintiff and such similarly situated persons.

62.     Waste Pro USA and Waste Pro Florida, and each of their respective parents, divisions, subsidiaries or affiliates, however constituted for all location(s) at issue, were joint

employers of the Plaintiff and the similarly situated driver employees in their respective territories because they commonly controlled the terms of compensation and conditions of employment of Plaintiff and others similarly situated, and are not completely disassociated with respect to the terms of compensation and conditions of employment of Plaintiff and others similarly situated.

63.     Defendants, Waste Pro USA and Waste Pro Florida, directly or indirectly acted in the interest of an employer toward Plaintiff and other similarly situated employees at locations in Florida at all material times, including without limitation directly or indirectly controlling the terms and conditions of employment and compensation of Plaintiff and other workers similarly situated.

64.     As such, Plaintiff and the Putative Class Members in this action were jointly employed by Waste Pro USA and Waste Pro Florida under the FLSA.

**B.      Plaintiff and the Putative Class Members are (or were) Waste Disposal Drivers for Waste Pro Throughout Florida**

65.     Defendants' Waste Disposal Drivers, including Plaintiff and the Putative Class Members, all drove assigned routes to collect and dispose of residential or commercial waste and/or recyclable materials for Defendants' customers throughout Florida.

66.     Defendants' Waste Disposal Drivers are all non-exempt employees under the FLSA.

67.     Plaintiff Wright was employed as a non-exempt Waste Disposal Driver at Waste Pro's facility in Pembroke Pines, Florida from October 1, 2014 until February 2016.

68.     Plaintiff Wright was compensated on a job/day rate determined by the number of hours worked in a day.

69.     Plaintiff Wright did not receive the proper amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.

70.     The Putative Class Members are (or were) non-exempt Waste Disposal Drivers for Defendants throughout Florida for the 3-year period preceding the filing of this complaint through the final disposition of this matter, except those who previously joined the South Carolina action at

an earlier time.

71.     None of the FLSA exemptions relieving a covered employer of the statutory duty to pay employees overtime at one and one-half times the regular rate of pay apply to Defendants, Plaintiff, or the Putative Class Members.

72.     Plaintiff and the Putative Class Members are similarly situated with respect to their job duties, their pay structure and, as set forth below, the policies of Defendants resulting in FLSA violations.

**C.     Defendants did not (and do not) pay Plaintiff and the Putative Class Members overtime in accordance with the FLSA.**

73.     Plaintiff and the Putative Class Members were (and are) required to work overtime hours when requested by Defendants, and were (and are) subject to potential disciplinary action for refusing to work overtime.

74.     Plaintiff and the Putative Class Members regularly worked (or work) over forty (40) hours in a workweek as Waste Disposal Drivers.

75.     Defendants compensated Plaintiff and Putative Class Members on a purported job/day rate, in addition to other forms of compensation. These other forms of compensation are not in compliance with the day and job rate provisions of 29 C.F.R. § 778.112 and, ultimately, result in a miscalculation of Plaintiff and the Putative Class Members' regular rate and resulting overtime compensation. These other forms of compensation (help pay, bonus pay, and safety bonus) may vary by name and amounts, but nevertheless have the same overall effect in invalidating Defendants' attempt to categorize and compensate Plaintiff and the Putative Class Members under the pay provision permitted by 29 C.F.R. § 778.112.

76.     Additionally, Defendants would only pay a "day rate" to Plaintiff and the Putative Class Members if they worked a preset number of hours per day.  If the designated number of hours were not worked by Plaintiff or the Putative Class Members, then they did not receive the full "day

rate." This is a blatant violation of the day rate provision of 29 C.F.R. § 778.112.

77.     Indeed, a day rate plan can only be valid if an employee is paid a flat sum for a day's work **without regard to the number of hours worked in the day**. 29 C.F.R. § 778.112 (emphasis added). Because Plaintiff and the Putative Class Members are not paid a flat sum for a day's work without regard to the number of hours worked in the day, they are not paid under a true "day rate" plan, and Waste Pro cannot avail itself of such a pay system.

78.     Defendants' calculation of Plaintiff and the Putative Class Members' regular rate of pay does not comply with the FLSA.

79.     Defendants paid Plaintiff and the Putative Class Members one-half of the regular rate of each hour worked over 40 hours in a workweek.

80.     Defendants paid Plaintiff and the Putative Class Members a purported day rate, plus other forms of compensation for services.

81.     In addition to the purported day rate that Defendants paid Plaintiff and the Putative Class Members, Defendants compensated Plaintiff and the Putative Class Members for the same type of work that they normally performed on an hourly basis. For example, if Plaintiff and the Putative Class Members completed their assigned routes for the day, they would be asked to help other drivers with their incomplete routes. Generally, when Defendants paid Plaintiff and the Putative Class Members on an hourly basis, as opposed to a daily basis, they referred to these hourly payments as "help pay".

82.     Defendants also compensated Plaintiff and the Putative Class Members on a basis other than the daily rate basis for what Defendants categorized as "bonus pay", "incentive pay", "extra pay" and "miscellaneous pay".

83.     In the event that Plaintiff and the Putative Class Members finished their route for the day early or needed to work for only half of the day, Defendants, at least sometimes, did not pay

them the day rate, but rather compensated them on an hourly basis and in a lesser amount than the day rate.

84.     Defendants also compensated Plaintiff and the Putative Class Members with a form of incentive pay for completing a certain amount of time without any accidents.  Defendants paid a non-discretionary safety bonus that would be paid to the Plaintiff and the Putative Class Members on a weekly basis.

85.     Plaintiff and the Putative Class Members were hired to work a regular workweek consisting of forty (40) hours per workweek, and it was the Plaintiffs' understanding that their wages would compensate them for forty (40) hours. Further, the day rates were based upon an eight (8) hour day and approximated the hourly rates that prevailed in the market for the type of work performed by Plaintiff and the Putative Class Members.

86.     Plaintiff and the Putative Class Members regularly worked over forty (40) hours in a workweek as Waste Disposal Drivers.

87.     The FLSA requires non-exempt employees, like Plaintiff and the Putative Class Members, to be compensated for overtime work at the mandated overtime pay rate.

88.     Plaintiff and the Putative Class Members were entitled to receive time and one-half compensation for all hours worked over forty (40) hours in a workweek.

89.     The payment scheme used by the Defendants to pay Plaintiff and the Putative Class Members did not comply with the FLSA.

90.     Defendants violated and continue to violate the FLSA by failing to pay its Waste Disposal Drivers, including Plaintiff and the Putative Class Members, time and one-half for each hour worked in excess of forty (40) hours per workweek.

91.     As Defendants' employees, Plaintiff and the Putative Class Members were subjected to the same or a substantially similar payment scheme, as described above.

92.     On several occasions, Plaintiff and other similarly situated drivers complained to management that their overtime was not being calculated correctly and pleaded with them to correct it.

93.     In response to Plaintiff's and other similarly situated drivers' complaints, Waste Pro management told Plaintiff and other drivers that they were paid "Chinese overtime," that paying only "Chinese overtime" was Waste Pro's corporate-wide policy, and that the company would not pay them overtime at the regular rate of one and one half times their pay.

94.     Plaintiffs were required to perform necessary and integral work for Defendants while not clocked in, or otherwise off the clock.

95.     The off the clock work usually occurred prior to the Plaintiffs daily driving routes and after the routes or any helper routes were completed at the end of the day.

96.     Further, Plaintiff and the putative class members were subjected to automatic deductions for 30-minute meal period, despite Waste Pro's knowledge that Plaintiff and the Putative Class Members routinely worked through their designated thirty (30) minute meal periods.

97.     Defendants are aware that Plaintiff and the Putative Class Members regularly worked through their 30-minute meal periods.

98.     Defendants' systematic deduction of the thirty (30) minute meal period from hours worked in excess of forty (40) hours per workweek deprived Plaintiff and the Putative Class Members of overtime pay in violation of the FLSA.

99.     Plaintiff and the Putative Class Members were subjected to the same or a substantially similar policy, practice, or scheme of having the 30-minute meal period deducted from their on-the clock time, as described above.

**COUNT I – RECOVERY OF OVERTIME COMPENSATION (29 U.S.C. § 207)**

100.     Plaintiff and the Putative Class Members incorporate by reference paragraphs 1-99 as

though fully and completely set forth herein.

101.     Defendant's practice of failing to pay Plaintiff and the Putative Class Members time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA.  29 U.S.C. § 207.

102.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to Defendants or Plaintiffs.

103.     Defendants failed to keep adequate records of the Plaintiff's and Class Member's work hours and pay in violation of section 211(c) of the FLSA.  29 U.S.C. § 211(c).

104.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.     The time of day and day of week on which the employees' work week begins;

b.     The regular hourly rate or pay for any workweek in which overtime compensation is due under Section 7(a) of the FLSA;

c.     An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.     The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.     The hours worked each workday and total hours worked each workweek;

f.     The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive or premium overtime compensation;

g.     The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.     The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

     i.      The dates, amounts, and nature of the items which make up the total additions and deductions;

     j.      The total wages paid each pay period; and

     k.      The date of payment and the pay period covered by payment.

29 C.F.R. §§ 516.2, 516.5.

105.    Defendants have not complied with the federal law and have failed to maintain such records with respect to Plaintiff and the Putative Class Members.  Because Defendants' records are inaccurate and/or inadequate, Plaintiff and the Putative Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

106.    Defendants' failure to properly compensate employees at a rate of at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek, results from Defendants' purported day rate payment policy or practice that applies to all similarly-situated employees, nationwide.

107.    Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay overtime compensation correctly with respect to Plaintiff and the Putative Class Members.

108.    Specifically, despite the fact that numerous Waste Disposal Drivers brought Defendants' aforementioned illegal policies and FLSA violations to Defendants' attention throughout their employment, Defendants' refused to pay Plaintiff and the Putative Class Members their proper compensation as required by the FLSA.

109.    Defendants did not act in good faith or reliance upon any of the following in formulating their pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, et seq., (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

110.    Accordingly, Plaintiff and the Putative Class Members bring this cause of action under section 216(b) of the FLSA, which allows them to recover all unpaid overtime compensation to which they are entitled, but have not been paid, for the 3-year period preceding the filing of this complaint through the final disposition of this matter. 29 U.S.C. § 216(b).

111.    Plaintiff and the Putative Class Members contend that Defendants' conduct in violating the FLSA is willful. Accordingly, Plaintiff and the Putative Class Members seek recovery of all unpaid overtime compensation to which they are entitled, but have not been paid, for the three years preceding the filing of this complaint through the final disposition of this matter. 29 U.S.C. § 216(b).

112.    Due to the willful nature of Defendants' conduct, Plaintiff and the Putative Class Members seek to recover, as liquidated damages, an amount equal to unpaid overtime wages for the 3-year period preceding the filing of this complaint through the final disposition of this matter—that is, the same period for which unpaid overtime damages are sought. 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court enter judgment against the Defendants:

a.    For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all Putative Class Members;

b.    For an Order approving the form and content of a notice to be sent to all potential

collective action members advising them of the pendency of this litigation and of their rights with respect thereto;

c.      For an Order equitably tolling the claims of those Putative Class Members, including Plaintiff, who previously filed a consent to join form in the South Carolina Action.

d.      For a declaratory judgment that Defendants have willfully and in bad faith violated the overtime wage provisions of the FLSA, and have deprived Plaintiff and the Putative Class Members of their rights to such compensation;

e.      For an Order requiring Defendants to provide a complete and accurate accounting of all overtime wages to which Plaintiff and all Putative Class Members;

f.      For an Order awarding Plaintiff (and those who have joined in the suit) back wages that have been improperly withheld;

g.      For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs (and those who have joined in the suit);

h.      For an Order awarding Plaintiff (and those who have joined in the suit) the costs of this action;

i.      For an Order awarding Plaintiff (and those who have joined in the suit) attorneys' fees;

j.      For an Order awarding Plaintiff (and those who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

k.      For an Order awarding Plaintiff a service award as permitted by law;

l.      For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted by:

**MORGAN & MORGAN, P.A**.

**_C. Ryan Morgan, Esq._**
FBN 0015527
N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:       (407) 420-1414
Facsimile:       (407) 867-4791
Email:  rmorgan@forthepeople.com

**Paul M. Botros, Esq**.
FBN 0063365
600 N. Pine Island Road.
Suite 400
Plantation, FL 33324
Telephone:      (954) 327-5352
Facsimile:       (954) 327-3017
Email:  pbotros@forthepeople.com

And

**ANDERSON ALEXANDER, PLLC**

**Austin W. Anderson, Esq.**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
_pro hac vice_ application forthcoming

**Clif Alexander, Esq.**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
_pro hac vice_ application forthcoming

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND PUTATIVE CLASS MEMBERS**