UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**ANTHONY WRIGHT, Individually and on
behalf of all others similarly situated,**

     **Plaintiff,**     **CASE NUMBER: 0:19-cv-62051-KMM**

**v.**

**WASTE PRO USA, INC., and WASTE PRO
OF FLORIDA, INC.,**

     **Defendants.**
_____/

**PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION
AND FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS AND
INCORPORATED MEMORANDUM OF LAW**
_____

Respectfully submitted by:

| **MORGAN & MORGAN, P.A**. | **ANDERSON ALEXANDER, PLLC** |
|---|---|
| ***C. Ryan Morgan, Esq.***<br>FBN 0015527<br>N. Orange Ave., 16th Floor<br>P.O. Box 4979<br>Orlando, FL 32802-4979<br>Telephone: (407) 420-1414<br>Facsimile: (407) 867-4791<br>Email: rmorgan@forthepeople.com<br><br>**Paul M. Botros, Esq**.<br>FBN 0063365<br>8151 Peters Road,<br>Suite 4000<br>Plantation, FL 33324<br>Telephone: (954) 327-5352<br>Facsimile: (954) 327-3017<br>Email: pbotros@forthepeople.com<br><br>and | **Austin W. Anderson, Esq.**<br>Federal I.D. No. 777114<br>Texas Bar No. 24045189<br>austin@a2xlaw.com<br>*pro hac vice* granted<br><br>**Clif Alexander, Esq.**<br>Federal I.D. No. 1138436<br>Texas Bar No. 24064805<br>clif@a2xlaw.com<br>819 N. Upper Broadway<br>Corpus Christi, Texas 78401<br>Telephone: (361) 452-1279<br>Facsimile: (361) 452-1284<br>*pro hac vice* granted<br><br>**Attorneys in Charge for Plaintiff and
Putative Class Members** |

Pursuant to the Federal and Local Rules of Civil Procedure and 29 U.S.C. § 216(b), Plaintiff, Anthony Wright, individually, and on behalf of all others similarly situated, respectfully requests the entry of an Order permitting, under court supervision, notice to all "**current and former Waste Disposal Drivers, who were/are employed by Defendants, Waste Pro USA, Inc. (hereinafter referred to as "WP USA") and Waste Pro of Florida, Inc. (hereinafter referred to as "WP FL" and together with WP USA, "Waste Pro" and/or "Defendant(s)"), in Florida, and who were/are paid on a job/day rate basis, within the last three (3) years prior to the filing of this Motion.**"

This is not a matter of first impression. Recently, two collective actions were certified against Waste Pro entities involving Waste Disposal Driver claims identical to here. *See Daniel Hansen v. Waste Pro of South Carolina, Inc.*, Case No. 2:17-cv-2654-DCN (D.S.C. Order dated April 16, 2020) (attached as **Exhibit A**); and *Kenneth Privette v. Waste Pro of North Carolina, Inc.*, Case No. 2:19-cv-3221-DCN (D.S.C. Order dated April 16, 2020) (attached as **Exhibit B**). In fact, Plaintiff and the Opt-in Plaintiffs here originally filed and joined the same South Carolina action just certified prior to being dismissed for lack of personal jurisdiction over certain Waste Pro entities. *See* Complaint [D.E. 1, ¶¶ 4-9]. Additionally, another matter pending in the Middle District of Florida was also certified against Waste Pro last year involving similar allegations as here on behalf of helpers who worked for Waste Pro. *See Thomas v. Waste Pro USA, Inc., and Waste Pro of Florida, Inc.*, 360 F.Supp.3d 1313 (M.D. Fla. March 12, 2019). No reasons exist to depart from these previous rulings and this Court should also certify this matter.

Plaintiff seeks to facilitate notice to the entire class of Waste Disposal Drivers ("Drivers") who were/are not paid proper overtime compensation due to them, as required by the Fair Labor Standards Act ("FLSA"), for the overtime hours that they worked each week. Due to Defendant's company-wide policies and procedures, Plaintiff and the putative class members have been, and

continue to be, deprived of wages for all hours worked.[1]  Specifically, Defendants compensate their Drivers on an alleged "day rate" basis that was set to cover a specific number of hours worked each day, and not *all* hours worked.  Furthermore, Drivers were not eligible to receive their full "day rate" unless they work a certain number of hours per work day.  However, when Plaintiff worked over forty (40) hours each week, and/or beyond the amount of hours that his daily rate of pay is set to cover, Defendants failed, and continue to fail, to compensate the Drivers at a rate that is one and one-half times their regular rate of pay for their overtime hours worked each week.  Instead, Defendants pay, and continue to pay, its Drivers only a half-time rate of pay for their overtime hours worked. Additionally, Defendants failed to pay Drivers for all hours worked by them. Therefore, Defendants violated, and continue to violate, the FLSA by failing to pay their Drivers proper overtime compensation as prescribed by law.

Plaintiff's proposed Class Notice and Consent to Become an Opt-In Plaintiff are attached hereto as **EXHIBITS C and D,** respectively.[2]

## MEMORANDUM OF LAW

### I.  RELEVANT FACTUAL BACKGROUND

#### A.  Waste Pro Operates One of the Largest Full Service Vertically Integrated Waste Management Companies in the Southern United States

Waste Pro is "one of the largest, full-service, vertically integrated waste management companies."  *See* https://www.wasteprousa.com/leadership/john-jennings/ (John Jennings' Profile from Waste Pro's Website, attached as **Exhibit E**). The company "provides unparalleled collection and processing services from more than 75 local and regional operating facilities in Florida, Georgia,

---

[1.] To date, 111drivers have opted into this matter who worked for Waste Pro in Florida.  *See* DE #s D1-1, D-9, D-12, D-19, D-21, D-23, D-29, D-33, D-35, D-40, D-45, D-48, D-50, D-52, D-54, D-56, D-58, D-65, D-67, D-70, D-72, D-74, D-80, D-82, D-84, D-86, D-88, D-90, D-92, D-95, D-97, D-101, D-106, D-110, D-112, D-115, D-119, ).
[2] Plaintiff is utilizing the same form of class notice and consent form which counsel and the parties ultimately agreed to in the *Hansen* and *Privette* matters described above.  Plaintiff's and Defendant's Counsel here are the same counsel as in *Hansen* and *Privette*.

North and South Carolina, Alabama, Mississippi, Louisiana, Arkansas, and Tennessee." *Id.*   Waste Pro services "the solid waste removal and recycling needs of over two million residential and commercial customers in more than 500 towns and municipalities across the South." *See* https://www.wasteprousa.com/in-the-community/ (Caring for our Communities sub-page from Waste Pro's Website, attached as **Exhibit F**).  Naturally, in order to provide these services and keep up with its customers' demands, Waste Pro employs thousands of Waste Disposal Drivers throughout its footprint during the relevant time period.  *See* https://www.wasteprousa.com/waste-pro-recognized-as-4th-largest-privately-owned-company-in-central-florida-by-orlando-business-journal/ (As of October 2017 Waste Pro employed over 3,200 employees, attached as **Exhibit G**).

B.  Waste Pro Drivers Are Subjected to the Same Pay Violations

Waste Pro requires its Drivers to work over forty (40) hours per work week.  This was/is partially due to the fact that once a Driver is finished with his/her route for the day, Defendants require the Driver to assist other drivers on their routes.[34]  However, Defendants did not properly compensate their Drivers at a rate that is one and one-half times the Drivers' regular rate of pay for their overtime hours worked each week.[5]  Defendants have effectively deprived Plaintiff and the putative class members of proper overtime compensation by implementing a company-wide policy whereby Defendants willfully mischaracterize its Drivers' compensation as a true day rate.  *See id.*

_____

[3] Declaration of Anthony Wright ("Wright Decl.") ¶¶ 5, 10; Declaration of Antonio Ford ("Ford Decl.") ¶¶ 5, 10; Declaration of Eula Allen-Fields ("Allen-Fields Decl.) ¶¶ 5, 10; Declaration of Jerome Jackson ("Jackson Decl.") ¶¶ 5, 10; Declaration of Trevor Cobb, Sr. ("Cobb Sr. Decl.") ¶¶ 5, 10; Declaration of Steve Benjamin ("Benjamin Decl.") ¶¶ 5, 10; Declaration of De'Angelo Coates ("Coates Decl.") ¶¶ 5, 10; Declaration of Thomas Griffin ("Griffin Decl.") ¶¶ 5, 10; Declaration of William Frison ("Frison Decl.") ¶¶ 5, 10; Declaration of Brandon Dean ("Dean Decl.") ¶¶ 5, 10; Declaration of Owen Reed ("Reed Decl.) ¶¶ 5, 10; Declaration of Latroy Jackson ("Jackson Decl.") ¶¶ 5, 10; Declaration of Antonio Blake ("Blake Decl.") ¶¶ 5, 10, collectively attached as **Composite Exhibit H.**
[4] For clarity, reference to declarations—after the declarant has been identified by their full name—will be made by reference to the declarant's last name and reference to the appropriate paragraph of the declaration.
[5] See Wright Decl. ¶14; Ford Decl. ¶14; Allen-Fields Decl. ¶14; Jackson Decl. ¶14; Cobb Sr. Decl. ¶14; Benjamin Decl. ¶14; Coates Decl. ¶14; Griffin Decl. ¶14; Frison Decl. ¶14; Dean Decl. ¶14; Reed Decl. ¶14; Reed Decl. ¶14; Jackson Decl. ¶14; Blake Decl. ¶14.

As explained by their supervisors, Waste Pro's policy was that Drivers were not (and are not) eligible to receive their full "day rate" of pay unless they worked a certain number of hours during the work day.[6]  This fact has been confirmed by Waste Pro's Regional Vice President, Russell Mackie, during his trial testimony in a related matter wherein a Waste Pro driver prevailed in his overtime claim at trial, against Defendant WP FL on a similar theory as here.  *See Andreu v. Waste Pro of Florida, Inc. et al.,* Case No. 17-60926-CIV (S.D. Fla.) (Transcript excerpts attached as **Exhibit I**, 341:2-25; 342:1-16.  Specifically, Mr. Mackie testified that if a driver completed his/tasks in less than four (4) hours, the driver would only earn **half** of his/her daily rate.  *See id.*  Furthermore, a cursory review of the paystubs produced to date by Waste Pro confirm Plaintiffs' allegations and show that Waste Pro did in fact pay a half-day rate to Drivers as well as other forms of compensation being included with the day rate in the Drivers' pay.  *See* Sample Paystubs for Class Members attached as **Composite Exhibit J**.

Additionally, the job descriptions for Driver positions at Defendant's facilities state that the Drivers number one "***essential job function***[]" will be to "safely drive[] [the] truck on pre-established route in accordance with Decision Driving Principles ***within prescribed time***," or that the driver will be responsible for "completing their job safely ***within the predetermined time limit***."  *See* **Exhibit K** (emphasis added).  This information is contained within job postings from Defendants' locations in Florida and certainly help confirm the day rate was only intended to cover the hours "prescribed" for the routes (even if they took longer).

---

[6] *See* Wright Decl. ¶¶ 8-9; Ford Decl. ¶¶ 8-9; Allen-Fields Decl. ¶¶ 8-9; Jackson Decl. ¶¶ 8-9; Cobb Sr. Decl. ¶¶ 8-9; Benjamin Decl. ¶¶ 8-9; Coates Decl. ¶¶ 8-9; Griffin Decl. ¶¶ 8-9; Frison Decl. ¶¶ 8-9; Dean Decl. ¶¶ 8-9; Reed Decl. ¶¶ 8-9; Reed Decl. ¶¶ 8-9; Jackson Decl. ¶¶ 8-9; Blake Decl. ¶¶ 8-9.

Furthermore, Defendants' Drivers were also not compensated for all hours worked due to practices and policies of Waste Pro.[7]  To make matters worse, the Waste Pro supervisors managing the Drivers were aware this uncompensated work was occurring.  *Id.*

The aforementioned illegal pay practices are company-wide practices, within Florida, as evidenced by the declarations of the Opt-In Plaintiffs, Drivers who were employed by Waste Pro in six different locations throughout the state (Pembroke Pines, Orlando, Pompano, Jacksonville, Daytona, and Ft. Pierce).  *Id.* at ¶¶ 2.  This collective action is currently made up of **106** similarly-situated Drivers from locations throughout Florida who have all opted into this case *prior* to receiving court-approved notice. *See,* FN1, supra. It cannot be disputed that Defendants did not pay overtime at time and one-half for their hours worked over forty (40) each week.  Waste Pro's Human Resource Representative, Regina Lombardo, confirmed that overtime compensation for all Waste Pro employees within Florida who were paid on a day rate basis was calculated at a half time rate during her testimony at the *Andreu* trial. *See* Testimony of Regina Lombardo in *Andreu*, attached as **Exhibit L**, at 400:16-25 through 405:1-5.  It is clear that Defendants compensated all of their Waste Disposal Drivers in a similar fashion, and did not compensate the Waste Disposal Drivers at a time and one-half rate for all of their hours worked over forty (40) each week.  *See* **Composite Exhibit H**, *generally.*

Moreover, this is not the first legal claim brought against Defendants or its subsidiaries concerning the illegal policy of failing to compensate employees proper time and one-half overtime compensation for all of their hours worked over forty (40) each week.  *See supra*, pp. 1-2.  Rather, there have been at least twelve (12) law suits that have been filed in Federal Court against Waste Pro

---

[7] *See* Wright Decl. ¶¶ 16-22; Ford Decl. ¶¶ 16-22; Allen-Fields Decl. ¶¶ 16-22; Jackson Decl. ¶¶ 16-22; Cobb Sr. Decl. ¶¶ 16-22; Benjamin Decl. ¶¶ 16-22; Coates Decl. ¶¶ 16-22; Griffin Decl. ¶¶ 16-22; Frison Decl. ¶¶ 16-22; Dean Decl. ¶¶ 16-22; Reed Decl. ¶¶ 16-22; Reed Decl. ¶¶ 16-22; Jackson Decl. ¶¶ 16-22; Blake Decl. ¶¶ 16-22.

and their affiliated companies for violations of the overtime provisions of the FLSA.[8]  In the *Andreu*

lawsuit described above, the plaintiff was a Driver for Waste Pro who was compensated on a "day

rate" and who was not compensated at a rate that was one and one-half times his regular rate of pay

for the hours that he worked over forty (40) each week. *See Andreu v. Waste Pro of Florida, Inc. et al,*

Case No. 0:2017cv60926, ECF No. 1 (S.D. Fla. April 20, 2018, D.E. 125). In *Andreu*, the jury

returned a verdict for the Plaintiff and decided that Waste Pro's actions were not taken in good faith,

nor were Defendants' actions taken in conformity with and in reliance on a written administrative

interpretation by the Department of Labor.  *See* Excerpts from *Andreu* Trial Transcript, attached as

**Exhibit M**, at 623:22-25; 624:1.

Here, the overwhelming evidence—which includes the fact that (i) there are currently 106

Opt-In Plaintiffs involved in this action; (ii) thirteen (13) declarations from Drivers who worked for

Waste Pro at six (6) Florida locations; (iii) similar allegations filed in Federal Court on multiple

occasions against Waste Pro and other subsidiary entities subject to the same pay plans at issue; (iv) a

jury verdict as a result of virtually the same claim that is at issue in this case against WP FL, a named

Defendant in this matter; and (v) other certified collective actions pending against Waste Pro and

---

[8.] *See Rogers v. Waste Pro Of Florida, Inc.*, Case No. 2:2007cv14147 (S.D. Fla. May 14, 2007) (complaint alleging failure to pay drivers and helpers proper overtime, claims resolved via settlement); *Gonzalez v. Waste Collection, Inc. & Waste Pro U.S.A.*, Case No. 2:2008cv14070 (S.D. Fla. Feb. 22, 2008) (complaint alleging failure to pay drivers and helpers proper overtime, claims resolved via settlement); *Benvenuto v. Waste Pro USA, Inc.*, Case No. 2:2014cv14299 (S.D. Fla. July 31, 2014) (complaint alleging failure to pay roll-off driver proper overtime, claims resolved via settlement); *Berenguer v. Waste Pro of Florida, Inc. et al.*, Case No. 9:2014cv80364 (S.D. Fla. Mar. 13, 2014) (complaint alleging failure to pay dispatcher proper overtime, claims resolved via settlement); *Close v. Waste Pro of Florida, Inc.*, Case No. 3:2013cv00099 (M.D. Fla. Jan. 28, 2013) (complaint alleging failure to pay dispatcher proper overtime, claims resolved via settlement); *Gutierrez v. Waste Pro Of Florida, Inc.*, Case. No. 1:2013cv20071 (S.D. Fla Jan. 8, 2013) (complaint alleging failure to pay dispatcher proper overtime, claims resolved via settlement); *Riddle v. Waste Pro USA, Inc.*, Case No. 6:2011cv01593 (M.D. Fla. Sept. 29, 2011) (complaint alleging failure to pay recycle driver proper overtime, claims resolved via settlement); *Jeanis v. Waste Pro USA, Inc., et al*, Case No. 2:2011cv00165 (M.D. Fla. March 25, 2011) (complaint alleging failure to pay recycle driver proper overtime, claims resolved via settlement); *Andreu v. Waste Pro Of Florida, Inc. et al, Case No. 0:2017cv60926* (S.D. Fla. May 9, 2019) (Plaintiff awarded approximately $38,000 in unpaid overtime at trial and an equal amount in liquidated damages); *Thomas v. Waste Pro U.S.A.*, Case No. 8:2017cv02254 (M.D. Fla. Sept 28, 2017); *Hansen v. Waste Pro of South Carolina, Inc.*, Case No. 2:17-cv-2654-DCN (D.S.C. 2017); and *Privette v. Waste Pro of North Carolina, Inc.*, Case No. 2:19-cv-3221-DCN (D.S.C. 2019).

their affiliated subsidiaries on virtually the same claim that is at issue in this case—confirms that Defendants' Drivers are similarly situated, and subject to Defendants' common policy which applies to all of Defendants' Drivers at issue here.

These facts and conclusions easily satisfy the lenient standard to proceed with conditional certification for Defendants' Waste Disposal Drivers at all company locations within Florida. This relief is consistent with precedent found in this Court, and other District Courts throughout the Eleventh Circuit and beyond. *See infra* Section III. Because Defendants' Drivers were/are all compensated in the same manner and Defendants applied the same policy and practices to all of them, they all suffered and continue to suffer from the same class-wide wage and hour violations alleged herein. Plaintiff and opt-in Plaintiffs' claims are typical of the claims of other former and current Drivers employed by Defendants and are typical of the claims of all members of the representative class identified. *See* **Composite Exhibit H.** Based upon the record evidence presented to date, Plaintiff has demonstrated that all of Defendants' Drivers in Florida are "similarly situated" because:

> (a) they all performed nearly identical job duties on a day-to-day basis providing garbage collection services for Defendants;
>
> (b) they are all compensated on an alleged "day rate" of pay; and
>
> (c) Defendant failed to compensate all Florida Waste Disposal Drivers at a time and one-half rate for each hour that they worked over forty (40) each week.

Simply put, all other Drivers within the defined class are owed full and proper payment of their overtime wages and the right to participate in this litigation. It is undisputed that Defendants have acted, or refused to act, on grounds applicable to all Drivers in the defined class, thereby making the identical relief appropriate with respect to the defined class as a whole. Plaintiff has also sufficiently demonstrated the fact that potential Opt-in Plaintiffs would desire to opt-in to this

action by virtue of the fact that One Hundred and Six (106) opt-in Plaintiffs have filed their consent to join forms in this action already.

Therefore, Plaintiff seeks this Court's authorization to facilitate notice to each of Defendants' Drivers at every location within Florida in the defined class who are/were subjected to the illegal pay practices described above at any time within the last three (3) years. Plaintiff further requests that he be permitted to give such notice as approved by this Court to all such class members concerning their rights to opt-in to this litigation by executing the appropriate consent form as required by Section 216(b) of the FLSA. The evidence as attached to this Motion clearly establishes that Defendants' other Drivers in the defined class had nearly identical duties, were paid in the same manner and were uniformly subjected to Defendants' illegal pay practices described above. Thus, conditional certification and notice to the putative class members is appropriate.

## II.    APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. *See* 29 U.S.C. § 216(b). The FLSA provides in pertinent part that:

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added). As further set forth below, the initial step to this process is conditional certification and notice to potential class members upon the lenient standard of showing that the class members are similarly situated. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-61 (11th Cir. 2008); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).

FLSA collective actions operate differently than the typical class actions under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to

a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013); *Anderson*, 488 F.3d 945 fn. 3. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See Symczyk*, 133 S. Ct. at 1530.

In *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), the Supreme Court determined that trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, which included sending court-authorized consent forms to potential plaintiffs by implementing 29 U.S.C. §216(b) to facilitate notice to potential plaintiffs. *Id.* at 169-70. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *Id.* "Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute." *Id.* at 171. Thus, "it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.* at 172. Additionally, the benefits of the collective action provisions of 29 U.S.C. §216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 170.

A.  Plaintiff's Burden is Lenient and District Courts within the Eleventh Circuit Require Only Minimal Evidence to Support Conditional Certification of a Class of Similarly Situated Employees

The FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 28 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than

those seeking to certify a class action under Rule 23, Fed.R.Civ.P.  See 28 U.S.C. § 216(b); *Anderson*,

488 F.3d at 953.  As the Eleventh Circuit Court of Appeals explained:

> For an opt-in class to be created under section 216(b), an employee need only show
> that he is suing his employer for himself and on behalf of other employees "similarly
> situated."  "[P]laintiffs need show only 'that their positions are similar, not identical,'
> to be the positions held by the putative class members."

*Grayson v. K Mart*, 79 F.3d 1086 n. 12 (11th Cir. 1996) (quotations omitted).  The FLSA does not

define the term "similarly situated."  See 28 U.S.C. § 216(b).  The Eleventh Circuit has noted that

courts should consider whether the employees are similarly situated "with respect to their job

requirements and in regards to their pay provisions."  *Dybach v. State of Fla. Dep't of Corrections*, 942

F.2d 1562, 1567 (11th Cir. 1991). "For an opt-in class to be created under section 216(b), an

employee need only show that he is suing his employer for himself and on behalf of other

employees 'similarly situated'"  *Grayson*, 79 F.3d at 1096. "[A] unified policy, plan, or scheme . . . may

not be required to satisfy the more liberal 'similarly situated' requirement  of § 216(b)."  *Id.* at 1095.

Thus, employees are indeed similarly situated when there is a "unified policy, plan, or scheme," but

a "unified policy, plan, or scheme," is not a requirement in order for the Court to lawfully

conditionally certify a class under § 216(b). *See id.* In *Grayson*, the Eleventh Circuit held that the

allegations, affidavits, and depositions that were offered by the Plaintiff were "more than sufficient"

to meet the "similarly situated standard found in § 216(b)," therefore indicating that the Court could

have conditionally certified the class if it had been presented with a record that had been less dense.

*See id.* at 1095-96.

### B. The Two-Stage Process for Conditional Certification.

Courts employ a two-phase inquiry to address whether the named plaintiffs are similarly

situated to the employees they seek to represent.  *Morgan*, 551 F.3d at 1260 ("[w]hile not requiring a

rigid process for determining similarity, we have sanctioned a two-stage procedure for district courts

to effectively manage FLSA collective actions in the pretrial phase"). "The first step of whether a collective action should be certified is the notice stage. . . . This first step is also referred to as conditional certification since the decision may be reexamined once the case is ready for trial." *Id.* at 1260-61. "The second stage is triggered by an employer's motion for decertification." *Id.* at 1261.

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Id.* at 1260. At that point, the certification is only conditional and by no means final. *See Anderson*, 488 F.3d at 952. During the first stage, "[b]ecause the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). The Court's first determination is "usually based only on the pleadings and any affidavits which have been submitted." *Hipp*, 252 F.3d at 1218. Once the District Court conditionally certifies the class, "putative class members are given notice and the opportunity to opt-in." *Id.* "The action proceeds as a representative action throughout discovery." *Id.*

"The second stage is triggered by an employer's motion for decertification." *Morgan*, 551 F.3d at 1261. Due to the fact that the majority of discovery has taken place at the second stage "the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity." *Morgan*, 551 F.3d at 1261. As such, the "second stage is less lenient, and the plaintiff bears a heavier burden." *Id.* This case is at Stage I, the "notice stage", and as such, Plaintiff has amply met his burden.

III.    **PLAINTIFF HAS MET THE LENIENT BURDEN FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION.**

Plaintiff has established both of the Eleventh Circuit's requirements for conditional certification. First, Plaintiff has presented sufficient evidence demonstrating that he and the other Drivers are similarly situated regarding their duties and compensation. *Reese v. Fla. BC Holdings, LLC*,

2018 WL 1863833, at *4 (M.D. Fla. Mar. 16, 2018) (Kelly, *M.J.*) (*citing Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). Second, Plaintiff has also demonstrated that there are others who would join this action if they were to receive court approved notice.  *Id.*

    A.   <u>Plaintiff and the Other Waste Disposal Drivers are Similarly Situated Regarding their Duties and Compensation.</u>

The overwhelming evidence establishes that Plaintiff and the other Drivers have/had the same primary duty of performing waste disposal services for Waste Pro's clients. *See* Wright Decl. ¶4; Ford Decl. ¶4; Allen-Fields Decl. ¶4; Jackson Decl. ¶4; Cobb Sr. Decl. ¶4; Benjamin Decl. ¶4; Coates Decl. ¶4; Griffin Decl. ¶4; Frison Decl. ¶4; Dean Decl. ¶4; Reed Decl. ¶4; Reed Decl. ¶4; Jackson Decl. ¶4; Blake Decl. ¶4; and *see* **Exhibit K** (uniform job descriptions).  Likewise, each Driver was paid a purported day rate and the defined collective here is limited to Waste Disposal Drivers who were paid a day rate.  *See* Wright Decl. ¶3; Ford Decl. ¶3; Allen-Fields Decl. ¶4; Jackson Decl. ¶3; Cobb Sr. Decl. ¶3; Benjamin Decl. ¶3; Coates Decl. ¶3; Griffin Decl. ¶3; Frison Decl. ¶3; Dean Decl. ¶3; Reed Decl. ¶3; Reed Decl. ¶3; Jackson Decl. ¶3; Blake Decl. ¶3.

    B.   <u>Plaintiff and the Other Waste Disposal Drivers are Similarly Situated Because All Were Subject to a Common Policy.</u>

Here, all Drivers were subject to Defendant's day rate policy of paying less than a full-day rate unless a certain number of hours were worked per day, and by including other forms of compensation which invalidates the day rate (or at minimum results in a miscalculation of the overtime compensation owed).  *See* D.E. 1, ¶¶ 25-29; Exhibit J; *see also* Wright Decl. ¶¶ 8-14; Ford Decl. ¶¶ 8-14; Allen-Fields Decl. ¶¶ 8-14; Jackson Decl. ¶¶ 8-14; Cobb Sr. Decl. ¶¶ 8-14; Benjamin Decl. ¶¶ 8-14; Coates Decl. ¶¶ 8-14; Griffin Decl. ¶¶ 8-14; Frison Decl. ¶¶ 8-14; Dean Decl. ¶¶ 8-14; Reed Decl. ¶¶ 8-14; Reed Decl. ¶¶ 8-14; Jackson Decl. ¶¶ 8-14; Blake Decl. ¶¶ 8-14.  Plaintiff alleges these practices violate the FLSA (even though as discussed below the merits of the claim are not a factor in the conditional certification analysis).

As described above, Waste Pro has been sued for similar violations in the past and three collective actions have already been certified against Waste Pro or its subsidiaries for the identical alleged violations at issue here. *See supra*, pp. 5-6. Furthermore, district courts have routinely conditionally certified collective actions based on improper payment of overtime wages to waste disposal drivers, just like here. *See Turner v. BFI Waste Services, LLC*, 268 F. Supp. 3d 831, 841–42 (D.S.C. 2017) (conditionally certifying a class of similarly situated waste disposal drivers who alleged that they were improperly paid at a half-time rate for their hours worked over (40) each week and for automatic deductions for meal breaks); *Flores v. Unity Disposal & Recycling, LLC*, 2015 WL 1523018, at *3-4 (D. Md. Apr. 2, 2015) (conditionally certifying a class of similarly situated sanitation workers who were victimized by defendant's company-wide policy whereby they were paid a flat daily rate without proper overtime compensation.); *Villegas v. Grace Disposal Sys.*, LLC, 2014 WL 793977, at *4-5 (S.D. Tex. Feb. 27, 2014) (conditionally certifying a class of similarly situated waste disposal drivers where five (5) opt-ins provided declarations stating that they were paid at a daily rate of pay without receiving one and on-half times their regular rates of pay for overtime hours worked, and where defendants' representative admitted that at least some drivers were paid a flat daily rate.); *Cardenas v. AAA Carting*, 2013 WL 4038593, at *1-2 (S.D.N.Y. Aug. 9, 2012) (conditionally certifying a class of similarly situated carting and/or sanitation workers where plaintiffs sufficiently alleged a company-wide policy of, *inter alia*, requiring employees to work more than forty hours per week without proper overtime compensation.); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (E.D.N.Y. 2011) (conditionally certifying a class of similarly situated sanitation workers who alleged that they worked over forty (40) hours per week, without proper overtime compensation.).[9]

---

[9] District courts have also routinely conditionally certified collective actions based on a policy or practice of requiring employees to work off-the-clock. *Aguirre-Molina v. Truscapes SW Fla Inc.*, 2016 WL 4472992 (M.D. Fla. Aug. 3, 2016) (conditionally certifying FLSA collective of hourly employees who were not paid overtime due to defendant's policy of requiring them to work off the clock); *Gear v. Vista Clinical Diagnostic, LLC*, 2016 WL 7045618 (M.D. Fla. June 3, 2016) (same); *Kirk v. Dr. Goodroof, Inc.*, 2015 WL 5159127 (M.D. Fla. Sept. 2,

Plaintiff and the Waste Disposal Drivers were/are subjected to a common policy, plan and practice as described above. As such, Plaintiff has met his burden to show that conditional certification of this collective action is proper.

### C. Plaintiff Has Demonstrated that Others Will Join the Lawsuit.

Plaintiff has met his burden to show that others will join this putative collective action. In determining whether to grant conditional certification, courts in Florida and across the nation do not require a high number of opt-in plaintiffs to have already joined the case to satisfy the conditional certification standard. "This Court has held that the consents of two opt-in plaintiffs and the plaintiff's declaration was sufficient reasonable basis to believe there are other employees who may desire to opt-in." *Aguirre-Molina v. Truscapes SW Fla Inc.*, 2016 WL 4472992, *4 (M.D. Fla. Aug. 3, 2016) (Report and Recommendation adopted in part at 2016 WL 4441468 (M.D. Fla. Aug. 23, 2016)). Currently, and without the benefit of the court-authorized Notice, One Hundred Six (106) individuals have shown interest by joining this action to pursue their FLSA claims against Defendant, and thirteen (13) have given sworn declarations that confirm Defendants' illegal companywide policy.  Moreover, each Plaintiff who has provided a declaration in this action has attested that others are likely to join if they were to receive Court approved notice.[10]

---

2015) (same);  *Gonzalez v. TZ Ins. Solutions, LLC*, 2014 WL 1248154 (M.D. Fla. Mar. 26, 2014) (same); *Todd v. Daewon Am. Inc.*, 2013 WL 557859 (M.D. Ala. Feb. 13, 2013) (conditionally certifying FLSA collective based upon company's policy of failing to pay for pre-shift work unless it exceeded 15 minutes); *Jewell v. Aaron's Inc.*, 2012 WL 2477039 (N.D. Ga. June 28, 2012) (conditionally certifying FLSA collective action based on evidence of a "systemic practice" of requiring employees to work off-the-clock during their lunches in order to "keep[ ] costs down."); *Lawson v. BellSouth Comms. Inc.*, 2011 WL 3608462 (N.D. Ga. Aug. 16, 2011) (conditionally certifying FLSA collective action for overtime based upon pattern or practice of requiring off-the-clock work); *Robinson v. Ryla Teleservs., Inc.*, 2011 WL 6667338 (S.D. Ala. Dec. 21, 2011) (conditionally certifying FLSA collective action for overtime based upon pattern or practice of requiring off-the-clock work prior to and after shifts); *McCray v. Cellco P'ship*, 2011 WL 2893061 (N.D. Fla. April 8, 2011) (conditionally certifying FLSA collective action for overtime based upon a "practice of being required to perform pre- and post-shift duties without pay."); *Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1364 (S.D. Ga. 2008) (conditionally certifying FLSA collective action for overtime pay based, in part, that defendant failed to pay "for all hours they were logged into West's system to receive calls.").

[10]  *See* Wright Decl. ¶24; Ford Decl. ¶24; Allen-Fields Decl. ¶24; Jackson Decl. ¶24; Cobb Sr. Decl. ¶24; Benjamin Decl. ¶24; Coates Decl. ¶24; Griffin Decl. ¶24; Frison Decl. ¶24; Dean Decl. ¶24; Reed Decl. ¶24;

This showing supports conditional certification of a company-wide class as proposed above. *See Santiago v. Mid–South Painting, Inc.,* 2011 WL 3418252 at \*4 (S.D. Fla. 2011) (conditionally certifying a class **based solely on the named plaintiff's** own declaration about opting in to the action); *Wynder v. Applied Card Systems, Inc.*, 2009 WL 3255585 (S.D. Fla. 2009) (certifying FLSA collective action based on Plaintiff's declaration and **one** opt-in Plaintiff's declaration); *Diejuste v. R. J. Elec., Inc.*, No. 780272, 2007 WL 2409831 (S.D. Fla. Aug. 21, 2007) (granting conditional certification when **two** individuals sought overtime wages against the same employer and each filed a declaration); *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500 (S.D. Fla. 2005) (store managers from **two** Starbucks' locations sufficient to send notice to all similarly situated store managers nationwide).[11]

The evidence in this case more than satisfies Plaintiff's lenient burden and demonstrates that Plaintiff and the other Waste Disposal Drivers are similarly situated in their duties and compensation, and all were subject to the same unlawful policy and practices described above.  *See supra.*  Plaintiff has also met his burden in demonstrating that there are other similarly situated Waste Disposal Drivers who desire to opt-in.  Plaintiff's evidence is comparable to, or exceeds, that which Courts throughout the Eleventh Circuit have held to be sufficient for conditional certification.[12]

---

Reed Decl. ¶24; Jackson Decl. ¶24; Blake Decl. ¶24.

[11]   *See also Kirk v. Dr. Goodroof, Inc.*, 2015 WL 1138445 (M.D. Fla. March 13, 2015) (**one** additional opt-in plaintiff sufficient to show interest in lawsuit); *Smith v. Cable Wiring Specialists, Inc.*, 2014 WL 4795160 (M.D. Fla. Sept. 25, 2014) (Plaintiff's declaration and **one** opt-in form sufficient for conditional certification in overtime case involving cable installers); *Robbins-Pagel v. Wm. F. Puckett, Inc.*, 2006 WL 3393706 (M.D. Fla. 2006) (**three** affidavits alleging claims of unpaid overtime enough evidence to establish other similarly situated individuals may be interested in joining the action).

[12] *See Aguirre-Molina*, 2016 WL 4472992 (conditionally certifying FLSA collective of hourly employees who were not paid overtime due to defendant's policy of requiring them to work off the clock based upon three declarations); *Gear*, 2016 WL 7045618 (conditionally certifying FLSA collective of hourly employees who were not paid overtime due to defendant's policy of requiring them to work off the clock based upon three declarations of named plaintiffs and two consents to join by opt-in plaintiffs); *Gonzalez*, 2014 WL 1248154 (same based upon five declarations); *Isaacs v. One Touch Direct, LLC*, 2015 WL 248658 (M.D. Fla. Jan. 20, 2015) (Granting conditional certification for off-the-clock allegations companywide in Florida based on declaration of Plaintiff and two opt-in Plaintiffs.); *Simpkins v. Pulte Home Corp.,* 2008 WL 3927275 (M.D. Fla. Aug. 21, 2008) (granting plaintiff's motion for conditional certification nationwide); *Palma v. MetroPCS*

For example, in *Barreda*, the plaintiffs alleged company-wide violations and sought conditional certification based on affidavits from only one location. *Barreda*, 2008 WL 7431307 at *1. There, the Court held that the plaintiffs had presented sufficient evidence of a policy that affected the entire putative class. *See id.* at *2.  In granting conditional certification the court stated that "[t]he fact that the only affidavits submitted in support of this finding come from O'Hare employees does not diminish the nationwide applicability of the offending policy." *Id.* at *2.  Here, there can be no question that Defendant's uniform pay practice was applied to all Waste Disposal Drivers in the defined class of Florida Drivers.

Plaintiff has presented sworn declarations provided under penalty of perjury by Waste Disposal Drivers that worked at six (6) different locations within Florida.  *See* **Composite Exhibit H.**  Additionally, Plaintiff has cited to other certified collective actions against Defendant and its subsidiaries in federal court alleging identical FLSA violations.  *See supra*, pp. 1-2.  Plaintiff further attaches paystubs reflecting payment of the half day rate when drivers worked less than a certain number of hours.  *See* **Composite Exhibit J**.  This evidence is sufficient to demonstrate the existence of a company policy for purposes of conditional certification.  Plaintiff clearly satisfies the applicable lenient evidentiary burden establishing that other Waste Disposal Drivers similarly situated to Plaintiff exist, and Florida wide conditional certification and notice to these individuals is

---

*Wireless, Inc.,* 2013 WL 6597079 (M.D. Fla. 2013 Dec. 16, 2013) (granting plaintiffs' motion for conditional certification for a nationwide class where plaintiff presented declarations from seven opt-in plaintiffs that shared "common core allegations"); *Jewell*, 2012 WL2477039 at *8 (certifying a nationwide class where declarants indicated the same FLSA violations that were happening to them, was likely occurring at other stores); *Vaccaro v. Candidates on Demand Group, Inc.*, 2008 WL 1711536 (S.D. Fla. April 10, 2008) (certifying a nationwide class where Plaintiff presented three declarations that demonstrated the putative plaintiffs worked for Defendant "performing similar tasks and suffering from the same alleged improper payment practices); *Riddle v. Suntrust Bank*, 2009 WL 3148768 (N.D. Ga. Sept. 29, 2009) (allowing nationwide notice to potential class members where there were three opt-in plaintiffs who alleged they were subject to a common practice of not receiving overtime pay for hours worked over 40 in a week in violation of the FLSA); *Adams v. Gilead Group, LLC,* 280 F. Supp. 3d 1358 (M.D. Fla. 2017) (conditionally certifying a company-wide collective action where there were only six opt-ins from Florida at the time of certification); and *Barreda v. Prospect Airport Services, Inc.*, 2008 WL 7431307 (N.D. Ill. 2008) (certifying companywide collective action based on affidavits from only one location).

warranted.

## IV.    FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION

### A.    The "Merits" of Plaintiff's Claims Are Not Considered When Determining Whether to Grant Notice.

One of Defendants' efforts to defend against Plaintiff's claims will likely be based upon some contention that they paid their Drivers properly, that one of the defendant entities is not a joint employer,[13] or that they did not commit the wage and hour violations alleged.  However, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated."  *See Keller v. HSNi, LLC*, 2010 WL 11629262, at *2 (M.D. Fla. Oct. 28, 2010) ("Defendant's arguments addressing the merits of Plaintiff's claims and the need for discovery are irrelevant at this early stage of the proceedings."); *Reese*, 2018 WL 1863833 at *4 ("At the conditional certification stage, the merits of the parties' claims are not weighed; instead, the plaintiff's burden focuses on their allegations of similarity, not refuting the defendant's arguments and defenses."); *Jewell*, 2012 WL 2477039 at *3 ("The focus of the court's inquiry at this stage is not on whether there has been an actual violation of law, but on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated.") (citing *Kreher v. City of Atlanta, Georgia*, 2006 WL 739572, at *4 (N.D. Ga. March 20, 2006); *Shajan v. Baralo, Ltd.*, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) (At the conditional certification stage, "[w]eighing of the merits is absolutely inappropriate."); and *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 91, 96 (S.D.N.Y. 2003)("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff . . . .").

---

[13] *See Adams* , 280 F. Supp. 3d at 1361 (granting nationwide conditional certification against two separate entities based on joint employment theory stating "Defendants request the Court narrow the proposed class to include only former Florida Field Collection Agents who worked on Comcast Collections. As noted, Plaintiff convincingly asserts that the relevant employees performed similar duties and were subject to a national payment policy; the Court will not limit the class to Florida employees who performed Comcast collections.")

B.  <u>Courts Do Not Consider the Need For Discovery During Stage I or Weigh Factual Disputes.</u>

Courts have consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination.  *See Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367 (D.S.C. 2012) (During the first stage for conditional certification the "Court must examine the pleadings and affidavits in order to determine whether the plaintiffs are similarly situated.); *Gordon v. TBC Retail Group, Inc.*, 134 F.Supp.3d 1027, 1032 (D.S.C. 2015) (recognizing that at the first stage of conditional certification, Courts determine whether certification is warranted by examining the pleadings and affidavits and at the second stage, the "court applies a heightened, fact specific" inquiry to determine whether the class is similarly situated); *Lloredo v. Radioshack Corp.,* 2005 WL 1156030, at *1 (S.D. Fla. May 12, 2005) (refusing to examine discovery in making its first stage similarly situated determination); *Harrison v. Enterprise Rent-A-Car Co.*, 1998 WL 422169, at *13 (M.D. Fla. July 1, 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification); and *Schwed v. Gen. Elec. Co.,* 159 F.R.D 373, 375 (N.D.N.Y. 1995) ("Even where later discovery proves the putative class members to be dissimilarly situated, notice . . . prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]").

Also, should Defendants attempt to use them, courts reject the use of counter-affidavits. *Palma*, 2013 WL 6597079 at *4 (defendant "inundated the Court with a barrage of competing declarations . . . However, [this] evidence exceeds by far this Court's limited inquiry at the notice stage of the conditional certification process."); and *Simpkins*, 2008 WL 3927275 at *5 (court indicated that "more is not necessarily better, and the evidence Pulte presents goes far beyond the scope of this Court's review at the first stage of the certification process.").

Moreover, discovery is not necessary because courts at this stage do not resolve factual disputes or make credibility determinations. *See Russell v. Life Win, Inc.,* 2014 WL 7877787, at *2 (M.D. Fla. Apr. 23, 2014) ("courts at this stage do not resolve factual disputes or make credibility determinations."); *Lytle v. Lowe's Home Centers, Inc.*, 2014 WL 103463, at *2 (M.D. Fla. Jan. 10, 2014) ("Notably, the Court does not make credibility determinations or resolve contradictory evidence presented by the parties during the notice stage."); *Reyes v. AT & T Corp.*, 801 F. Supp. 2d 1350, 1358 (S.D. Fla. 2011) ("Defendant's attempt . . . to seek a factual determination on the similarly situated question by presenting a vast amount of affidavit evidence 'demonstrate[s] a fundamental misunderstanding of the nature of the proceedings at this stage of the litigation.'"); and *Robinson*, 2011 WL 6667338 at *4 ("[T]he defendant, effectively, urges the undersigned to find that the plaintiffs and putative plaintiffs are not victims of a plan or policy to deny them overtime pay, but are instead the victims of *ad hoc* decision-making by low- or mid-level managers; this would require the Court to make a factual determination – without allowing the plaintiffs the benefits of undertaking their own discovery.  The Court, however, declines to resolve factual issues or make credibility determinations at this stage.").

Additionally, courts have held that any individualized defenses are **not** considered at the Stage I analysis, but are considered at the Stage II decertification stage. *See Simpkins,* 2008 WL 3927275, at *5 ("individual factual analysis is saved for the second stage of certification."); *Tanner v. TPUSA, Inc.*, 2014 WL 692916, *4 (M.D. Ga. Feb. 20, 2014) ("Likewise, the availability of individual defenses to individual plaintiffs is better left to decertification."); *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) ("Variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at the notice stage.").

Through the allegations in the Complaint, and the declarations and evidence that have been attached to this motion, Plaintiff has provided sufficient evidence to warrant notice of this lawsuit be sent to all other Waste Disposal Drivers in the defined class.  Because the "similarly situated" determination at the notice stage is preliminary, Defendant will not be prejudiced by the facilitation of notice because they can later argue that Plaintiff, opt-in Plaintiffs, and the putative class members are not in fact "similarly situated" enough to proceed collectively to trial once discovery is complete.

## V.  PLAINTIFF'S NOTICE IS ACCURATE AND SHOULD BE TEXTED AND E-MAILED AS WELL AS MAILED.[14]

Plaintiff's proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche,* 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted. To that end, Plaintiff requests they be permitted to e-mail the Class Notice, **Exhibit C**, to all Waste Disposal Drivers within the defined class, in addition to mailing same via first-class mail. Email notice is the new norm of communication, serves to further the broad remedial purpose of the FLSA, and has widely been adopted by courts throughout the country. *See Alequin v. Darden Rests., Inc.,* No. 12–61742–CIV, 2013 WL 3945919 (S.D. Fla. July 31, 2013) (noting that the Southern District of Florida commonly approves e-mail notice to potential opt-in class members in FLSA cases).[15]

---

[14] In the *Hansen* and *Privette* matters recently certified against Waste Pro entities, the Court allowed e-mail and text message notice be sent to South Carolina and North Carolina Waste Disposal Drivers. *See* Ex. A, pp. 14-15 and Ex. B, pp. 14-15.  Plaintiff's proposed class notice and consent form is consistent with those orders and the form of notice ultimately agreed to by the same counsel as here.  *See* footnote 2

[15] *See also Kraft v. Freight Handlers, Inc.,* 2019 WL 3854989, *6 (M.D. Fla. May 21, 2019); *Williams v. Coventry Health Care of Florida, Inc.,* 2016 WL 7013530 at * 1 (M.D. Fla. Oct. 4, 2016); *Collado v. J. & G. Transp., Inc.,* 2014 WL 5390569 at * 6 (S.D. Fla. Oct. 23, 2014); *Lewis v. Huntington Nat. Bank,* 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); *Butler v. Direct SAT USA, LLC,* 876 F. Supp.2d 560, 575 (D. Md. 2012) (allowing e-mail notice to putative class members because communication through e-mail is now the "norm."); *Denney v. Lester's, LLC,* 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court

Plaintiff also requests that this Court allow notice to be sent via text message. *See Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) ("The Court finds persuasive the [p]laintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice. . .'"). Additionally, "given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential class members than traditional first-class mail." *Landry*, 252 F. Supp. 3d at 1130; *see also Irine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("[T]ext messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone serving as the most consistent and reliable method of communication"); *Regan v. City of Hanahan*, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) ("text messaging is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move"); *Vega v. Point Security, LLC*, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017) ("[I]n the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [sic] using email and texts to notify potential class members is entirely appropriate.") Allowing notice by text message and e-mail will achieve the broad remedial purposes of the FLSA to ensure the most number of class members receive a form of the Notice and be given a chance to join this action.

In addition, Plaintiff requests that notice and consent to join be posted in a conspicuous location in each of Defendants locations where putative class members are expected to frequent. As recognized previously by the Middle District of Florida, "requests[to post notices] are routinely granted and the Court sees no reason to divert from that standard of practice in this case." *Scheall v.*

---

finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms.") (citing *O'Donnell v. Sw. Bell Yellow Pages, Inc.*, 2012 WL 1802336, at *4 (E.D. Mo. May 17, 2012); *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)(noting that "communication through email is [now] the norm.").

*NICAEA Acad.*, Inc., 2015 WL 3991041, at *3 (M.D. Fla. June 30, 2015) (citing *Fiore v. Goodyear Tire & Rubber Co.*, 2011 WL 867043, at *4 (M.D. Fla. Mar. 10, 2011)).[16]

### A.  A 60-Day Notice Period is Appropriate.

Notice periods may vary, however, Courts have routinely held that a sixty (60) day, or more, notice period is appropriate in FLSA cases. *See, e.g., Hernandez v. Two Bros. Farm, LLC*, 2008 WL 4613069, at *2 (S.D. Fla. Oct. 15, 2008) (approving 90 day opt-in period).[17]  Accordingly, in line with the cited authority, Plaintiff respectfully requests that the Court give putative class members sixty (60) days to return their consent to join forms and opt into the case.

### B.  Reminder Notice is Appropriate.

Similar to the email and text message transmission of the Notice, a reminder notice is appropriate as well.  Courts have repeatedly permitted such a reminder notice, because it ensures that putative class members are aware of their rights and the time within which to exercise same.[18]  In

---

[16] *See also Compagnone v. DL Pool Service, LLC* Case No. 2:15-cv-647-Ftm-99MRM, D.E. 48 (M.D. Fla. Nov. 11, 2016); *Collado v. J. & G. Transport, Inc.*, 2014 WL 5390569, at *6 (S.D. Fla. Oct. 2014) (". . . the Court orders Defendants to post a copy of the notice (both English and Spanish versions) as approved in this Order, along with the Consent to Become Party Plaintiff attached to the notice, at each of Defendants' locations at which such potential class members are employed. . . "); *Castillo v. P & R Enters., Inc.*, 517 F.Supp.2d 440, 449 (D.D.C.2007) (ordering notices to be posted in Defendant's offices).

[17] *Fiore v. Goodyear Tire & Rubber Co.*, 2011 WL 867043, at *4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Ballew v. Lennar Corp.*, 2008 WL 4218137, at *1 (M.D. Fla. Sept. 11, 2008) ("The Court further finds the 90 day period to be reasonable…"); *Gandhi v. Dell, Inc.*, 2009 WL 3427218, at *2 (W.D. Tex. Oct. 20, 2009) ("Ample authority suggests that 90 days is a reasonable amount of time to allow potential plaintiffs to opt in."); *Wass v. NPC Intern., Inc.*, 2011 WL 1118774, *5 (D. Kan. March 28, 2011) (denying the defendant's request to shorten the opt-in period to fewer than ninety days); *Calderon v. Geico Gen. Ins. Co.*, 2011 WL 98197, at *2, 8–9 (D. Md. Jan.12, 2011) (authorizing a ninety-day notice period); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68–69 (E.D. Pa. 2009) (finding a ninety-day opt-in period to be reasonable); *Shipes v. Amurcon Corp.*, 2012 WL 1720615, at *4 (E.D. Mich. May 16, 2012) (overruling defendant's objections to a 90 day opt-in period); *In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III)*, 2012 WL 3308880, at *29 (S.D. Tex. Aug. 10, 2012) (approving 90 day opt-in period); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868, at *1 (S.D. Ohio June 16, 2008) (approving 90 day opt-in period).

[18] *See Martinez v. DHL Express (USA) Inc.*, 2016 U.S. Dist. LEXIS 14304 (S.D. Fla. Feb. 5, 2016); *Hargrove v. Ryla Teleservices, Inc.*, 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) (authorizing plaintiffs' counsel to send a reminder letter to putative class members if responses were not received by plaintiffs within thirty days from the issuance of the original notice.); *Swarthout v. Ryla Teleservices, Inc.*, 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (same); Graham v. Overland Solutions, Inc., 2011 WL 1769737, at *4 (S.D. Cal. May 9, 2011) (approving reminder postcard to individuals who have not returned the opt-in forms); *Gee v. Suntrust Mortg., Inc.*, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) ("Plaintiffs' counsel may mail a reminder notice forty-

light of the FLSA's remedial purposes, and the many cases explicitly approving a reminder notice, this Court should permit Plaintiffs to send the putative class members a reminder notice via email, text message, and U.S. Mail, at the half-way point in the notice period to ensure that they are aware of their rights and the applicable deadlines within which to exercise them.

## VI.    NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS PERIOD.

Notice within a three-year statute of limitations period is appropriate in this case. The FLSA allows a Plaintiff to collect damages within a three-year statute of limitations if it can be shown that a Defendant's violation of the FLSA was "willful"—meaning that the "employer either knew, or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether Defendant's violations of the FLSA were willful is an issue going to the merits of the case, and not whether notice should be issued to potential claimants. *Abdul-Rasheed v. KableLink Comm., LLC*, 2013 WL 5954785, *5 (M.D. Fla. Nov. 7, 2013) (collecting cases); *Harris v. Performance Transp., LLC*, 2015 WL 1257404, *4 (M.D. Fla, March 18, 2015). The facts concerning willfulness must be elicited during discovery, and Defendant may challenge the three-year statute of limitations again at an appropriate time.[19]   Thus, notice should go to all individuals who were employed by Defendant during the three-year period preceding the Court's ruling on the instant Motion.

## VI.    CLASS MEMBERS SHOULD BE ALLOWED TO ELECTRONICALLY EXECUTE THEIR CONSENT FORMS.

---

five days after issuance of the first notice."); *Harris v. Vector Marketing Corp.*, 716 F.Supp.2d 835, 847(N.D. Cal. 2010) ("Particularly since the FLSA requires an opt-in procedure, the sending of a [reminder] postcard is appropriate."); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (ordering third-party administrator to send reminder notice, because, "[t]hese procedures provide the best possible notice to the Class Members.").

[19] The Court recently denied the Defendants' Motion to Dismiss on limitations grounds and asserted that willfulness is an issue to be determined at a later stage after the opportunity for discovery. *See* D.E. 116.

Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission'" and "courts have approved the use of online, electronic signature opt-in forms." *Landry*, 252 F. Supp. 3d at 1130 (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014); *Kraft*, 2019 WL 3854989 at *6 (allowing electronic signatures on consent forms and noting that "Florida law recognizes the validity of electronic signatures. Fla. Stat. § 668.004.");*White v. Integrated Elec. Techs., Inc.*, 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (granting Plaintiffs' request to allow class members to execute electronic consent forms); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (allowing class members to be given the option to execute their consent forms online via electronic signature service). Therefore, class members should have the option to sign their consent to join forms electronically. Giving class members this option is in line with the FLSA's remedial purposes and would ensure that class members have the ability to submit their consent forms without additional obstacles standing in their way.

## VII.   LIMITED DISCOVERY OF NAMES AND CONTACT INFORMATION OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE.

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006) (compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See, e.g., Hoffmann-La Roche,* 493 U.S. at 165; *see also Reese,* 2018 WL 1863833, at *6; *Randle v. Allconnect,*

24

*Inc.*, 2014 WL 1795184 (N.D. Ga. May 6, 2014) ("Plaintiff moves to require Defendant to produce information about potential class members, including their full names, last-known addresses, email addresses, dates of employment and dates of birth. This information is within Defendant's possession, its production to Plaintiff will facilitate issuance of the notice, and it is required to be produced by Defendant."); *Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); *Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006); *Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1169 (D. Kan. Jan. 10, 2006); *Dietrich v. Liberty Square,* 230 F.R.D. 574, 581 (N.D. Iowa 2005).[20] Thus, if this Court grants Plaintiff's Motion, the Court should likewise order Defendant to provide Plaintiff with a list of all putative class members' names, addresses, phone numbers, social security numbers,[21] and e-mail addresses to carry out notice.

**CONCLUSION**

Given the broad remedial provisions of the FLSA, coupled with the incredibly lenient standard for conditional certification, Plaintiff's allegations and declarations, along with all of the additional declarations and exhibits attached to this Motion, are more than sufficient to satisfy Plaintiff's relatively light burden of showing this Court that there are similarly situated Waste Disposal Drivers who worked for Waste Pro and who have suffered from the same FLSA violations who would join this suit if they received court-approved notice.

---

[20] The names, phone numbers, emails, and addresses of potential class members are discoverable during the regular course of discovery even absent judicial notice because current and former drivers are critical fact witnesses to this lawsuit. *Hoffmann-La Roche* acknowledged the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter." 493 U.S. at 160; *see also Franco v. Bank of America Corp.*, 691 F.Supp.2d 1324 (M.D. Fla. 2010) (granting plaintiff's motion to compel discovery of names of potential similarly situated employees); *Disimone v. Atlas Service, Inc.*, 2009 WL 5166262 (S.D. Fla. 2009) (ordering defendant to produce a list of plaintiffs' co-workers prior to conditional certification).

[21] Social Security numbers are necessary to effectuate notice so that class members' names can be processed through the national change of address database to ensure the most up to date physical addresses. Plaintiff agrees to any reasonable confidentiality provision requested by this Court.

WHEREFORE, Plaintiff, Anthony Wright, on behalf of himself and similarly situated individuals, respectfully request this Court issue an Order:

(i)        conditionally certifying a class of "current and former Waste Disposal Drivers, who were/are employed by Defendants, Waste Pro USA, Inc. (hereinafter referred to as "WP USA") and Waste Pro of Florida, Inc. (hereinafter referred to as "WP FL" and together with WP USA, "Waste Pro" and/or "Defendant(s)"), in Florida, and who were/are paid on a job/day rate basis, within the last three (3) years prior to the filing of this Motion";

(ii)        directing Defendants to produce to undersigned counsel within fourteen (14) days of the Order granting this Motion a list containing the names, the last known addresses, phone numbers, social security numbers, and e-mail addresses of putative class members who worked for Defendants from three years prior to the filing of the Motion to the present;

(iii)        authorizing undersigned counsel to send notice, in the form attached hereto as **Exhibit C**, to all individuals whose names appear on the list produced by Defendant's counsel by first-class mail, e-mail, and text-message;

(iv)        authorizing undersigned counsel to send a reminder notice to putative class members at the half-way point of the sixty  (60) day notice period.

(v)        providing all individuals whose names appear on the list produced by Defendants' counsel with sixty (60) days from the date the notices are initially mailed to file a Consent to Become Opt-In Plaintiff, in the form attached hereto as **Exhibit D**; and

(vi)        any other relief that is just and appropriate.

## CERTIFICATE OF GOOD FAITH CONFERRAL UNDER LOCAL RULE 7.1(a)(3)

Plaintiff's counsel conferred with Defendants' counsel in a good faith effort to resolve this Motion prior to its filing, but Defendant opposes the relief sought herein.

Respectfully submitted this 4th day of June, 2020.

| **MORGAN & MORGAN, P.A**. | **ANDERSON ALEXANDER, PLLC** |
|---|---|
| ***C. Ryan Morgan, Esq.***<br>FBN 0015527<br>N. Orange Ave., 16th Floor<br>P.O. Box 4979<br>Orlando, FL 32802-4979<br>Telephone:      (407) 420-1414<br>Facsimile:      (407) 867-4791<br>Email:  rmorgan@forthepeople.com<br><br>**Paul M. Botros, Esq**.<br>FBN 0063365<br>8151 Peters Road,<br>Suite 4000<br>Plantation, FL 33324<br>Telephone:      (954) 327-5352<br>Facsimile:      (954) 327-3017<br>Email:  pbotros@forthepeople.com<br><br>and | **Austin W. Anderson, Esq.**<br>Federal I.D. No. 777114<br>Texas Bar No. 24045189<br>austin@a2xlaw.com<br>*pro hac vice* granted<br><br>**Clif Alexander, Esq.**<br>Federal I.D. No. 1138436<br>Texas Bar No. 24064805<br>clif@a2xlaw.com<br>819 N. Upper Broadway<br>Corpus Christi, Texas 78401<br>Telephone: (361) 452-1279<br>Facsimile: (361) 452-1284<br>*pro hac vice* granted<br><br>**Attorneys in Charge for Plaintiff and Putative Class Members** |

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th Day of June, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which I understand will send notice of electronic filing to all parties of record.

**/s/ C. Ryan Morgan**

C. Ryan Morgan, Esq.