# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-62051-KMM

ANTHONY WRIGHT, individually and on
behalf of others similarly situated,

    Plaintiff,

v.

WASTE PRO USA, INC, *et al.*,

    Defendants.

_____/

## ORDER

THIS CAUSE came before the Court upon named Plaintiff Anthony Wright's ("Plaintiff") Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members. ("Mot.") (ECF No. 124). Defendants Waste Pro USA, Inc. and Waste Pro of Florida, Inc. (collectively, "Waste Pro" or "Defendants") filed a response in opposition. ("Resp.") (ECF No. 133). Plaintiff filed a reply. ("Reply") (ECF No. 137). The Motion is now ripe for review.

**I.  BACKGROUND**

Defendant Waste Pro USA, Inc. is the parent company of Defendant Waste Pro of Florida, Inc. *See* Amended Complaint ("Am. Compl.") (ECF No. 37) ¶ 21. Plaintiff alleges that Defendants jointly operate a waste disposal company. *Id.* Plaintiff was a waste disposal driver jointly employed by Defendants from October 1, 2014 until February of 2016. *Id.* ¶¶ 2, 95. In the Amended Complaint, Plaintiff alleges that Defendants violated the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq. Id.* ¶¶ 2–3. Plaintiff alleges that Defendants did not pay Plaintiff for all the hours that Plaintiff worked because Defendants did not

pay a true "day rate" for all the hours he worked in a given day.[1]  *Id.* ¶ 2.  Further, Plaintiff alleges that Defendants did not compensate him for pre-shift and post-shift duties, and that Defendants automatically deducted a thirty-minute lunch break even if he did not take a lunch break.  *Id.* ¶ 3.

Previously, Plaintiff, along with other opt-in plaintiffs, filed a lawsuit asserting claims for violations of the FLSA against Defendants in the District of South Carolina.  *Id.* ¶ 4.  On July 25, 2019, the District of South Carolina dismissed the action for lack of personal jurisdiction.  *See generally Wright v. Waste Pro USA Inc.*, No. 2:17-CV-02654, 2019 WL 3344040 (D.S.C. July 25, 2019).  On August 15, 2019, Plaintiff filed the instant action, bringing the same claims as he did in the District of South Carolina action.  *See generally* Am. Compl.

Now, Plaintiff moves to conditionally certify a collective action with the following class definition: "[All] current and former Waste Disposal Drivers, who were/are employed by Defendants, Waste Pro USA, Inc. and Waste Pro of Florida, Inc., in Florida, and who were/are paid on a job/day rate basis, within the last three (3) years prior to the filing of this Motion."  Mot. at 2.  Plaintiff also moves this Court to permit him to notify potential class members of the pendency of this action and of their right to opt-in.  *Id.* at 27.

**I.    LEGAL STANDARD**

The FLSA authorizes collective actions against employers for unpaid minimum wage and overtime compensation.  29 U.S.C. § 216(b).  Section 216(b) provides that an action "may be

---

[1] *See* Day Rates and Job Rates, 29 C.F.R. § 778.112

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

2

maintained . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.* A plaintiff may bring a collective action on behalf of similarly-situated persons subject to the requirements that prospective plaintiffs file a written consent in the court where the action is brought. *Id.*; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). A collective action brought under the FLSA can include only those plaintiffs who affirmatively opt-in to the action by filing their consent in writing. § 216(b).

Courts in the Eleventh Circuit generally use a two-tiered procedure for certifying FLSA collective actions. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (citation omitted). The first tier—referred to as the notice stage—involves the conditional certification of the class and notice to potential class members upon motion by the plaintiff. *See id.* (quoting *Hipp*, 252 F.3d at 1218). The burden is on the plaintiff to show that there is a "reasonable basis" for the claim that there are other similarly situated employees who desire to opt-in to the case. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259–61 (11th Cir. 2008). The standard by which a court determines whether plaintiffs are similarly situated at this stage is "fairly lenient [], and typically results in 'conditional certification' of a representative class." *Cameron-Grant*, 347 F.3d at 1243 n.2.

However, a class is not officially certified until the Court conducts the second-tier analysis. Upon a motion for decertification by the defendant after discovery is complete, the Court re-examines the question of certification. *Id.* Then, the Court determines whether there are similarly situated employees such that the action should proceed to trial as a representative action. *Id.* If the claimants are not similarly situated, the Court decertifies the class and the opt-in plaintiffs are dismissed without prejudice, while the original plaintiffs proceed to trial on their individual claims. *Id.*

## II. DISCUSSION

In his Motion, Plaintiff argues that (1) he has met the lenient burden for conditional certification of a collective action; (2) the Court should not make credibility determinations, address the merits, or consider any factual disputes at this stage of the two-tier analysis; and (3) the Court should authorize Plaintiff to send notice to putative class members. Mot. at 11–26. Defendants contend in their Response that (1) Plaintiff failed to "sufficiently engage" Defendants' evidentiary submissions, which alone justifies denying certification; (2) Plaintiff has not established that he is similarly situated to the members of the proposed class; and (3) the Court should deny Plaintiff's requests for the methods of notice, the length of the notice period, the length of the look-back period, and certain contact information of putative class members. Resp. at 4–16. The Court takes each of the Parties' arguments in turn.

### A. The Court Will Not Determine Issues of Credibility, Make Individual Factual Inquiries, Nor Address the Merits at This Stage.

As an initial matter, Plaintiff argues that (1) the Court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated; (2) courts have consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination; (3) Defendants' attempt to use counter-affidavits should be rejected; and (4) discovery is not necessary because courts do not resolve factual disputes or make credibility determinations at this stage. Mot. at 17–20. Defendants counter generally that the boilerplate allegations in Plaintiff's personal affidavit, as well as the other affidavits he submitted, are contradicted by the evidence and do "not successfully engage[] Defendants' opposing declarations."[2] Resp. at 4–7.

---

[2] Defendants also argue that the six (6) declarations of drivers employed during the period of the proposed collective and submitted in support of the Motion consist merely of "cookie cutter

"At the conditional certification stage, the merits of the parties' claims are not weighed; instead, the plaintiff's burden focuses on their allegations of similarity, not refuting the defendant's arguments and defenses." *Reese v. Fla. Bc Holdings, LLC*, No. 6:17-cv-1574-Orl-41GJK, 2018 WL 1863833, at *4 (M.D. Fla. Mar. 16, 2018), *report and recommendation adopted*, 2018 WL 2011334 (M.D. Fla. Apr. 30, 2018); *see also Keller v. HSNi, LLC*, No. 8:10-cv-1198-T-26EAJ, 2010 WL 11629262, at *2 (M.D. Fla. Oct. 28, 2010) ("Defendant's arguments addressing the merits of Plaintiff's claims and the need for discovery are irrelevant at this early stage of the proceedings."); *Jewell v. Aaron's, Inc.*, No. 1:12-CV-0563-AT, 2012 WL 2477039, at *3 (N.D. Ga. June 28, 2012) ("The focus of the court's inquiry at this stage is not on whether there has been an actual violation of law, but on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated."). Nor do courts resolve factual disputes or make credibility determinations at this stage. *See Russell v. Life Win, Inc.*, No. 8:11-cv-2802-T-26TBM, 2014 WL 7877787, at *2 (M.D. Fla. Apr. 23, 2014); *Lytle v. Lowe's Home Centers, Inc.*, No. 8:12-cv-1848-T-33TBM, 2014 WL 103463, at *2 (M.D. Fla. Jan. 10, 2014) ("Notably, the Court does not make credibility determinations or resolve contradictory evidence presented by the parties during the notice stage."); *Reyes v. AT & T Corp.*, 801 F. Supp. 2d 1350, 1358 (S.D. Fla. 2011) ("Defendant's attempt . . . to seek a factual determination on the similarly situated question by presenting a vast amount of affidavit evidence 'demonstrate[s] a fundamental misunderstanding of the nature of the proceedings at this stage of the litigation.'").

---

allegations" that fail to demonstrate that the employees are similarly situated to Plaintiff. Resp. at 6. However, the Court finds that, at this stage of the certification process, the affidavits, along with the other record evidence, provide a reasonable basis for Plaintiff's claim that there are other similarly situated Waste Pro employees.

Based on the foregoing, the Court declines to evaluate the merits of the case, or to make inquiries into factual disputes or the credibility of evidence in its analysis of whether Plaintiff and others are similarly situated.

### B.  Plaintiff Has Met His Burden for the Conditional Certification of a Collective Action.[3]

To conditionally certify a FLSA collective action, the Court must determine that there are other employees who: (1) are similarly situated with regard to their job requirements and pay provisions, and (2) desire to opt-in to the case. *See Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). The plaintiff bears the "fairly lenient" burden of satisfying these requirements. *See Morgan*, 551 F.3d at 1259–61. And, the decision to create an opt-in collective action and authorize notice to potential class members "remains soundly within the discretion of the district court." *Hipp*, 252 F.3d at 1219 (citations omitted).

i.  Similarly Situated

Plaintiff argues that certification of a collective action is appropriate because he and potential class members are similarly situated both in their (1) duties and compensation and (2) being subject to a common policy. *See* Mot. at 12–14. In response, Defendants argue that Plaintiff and other potential class members are not similarly situated because (1) Plaintiff and the putative class have dissimilar job titles, geographic locations, and time periods of employment; (2) no common policies were established by the same decision maker; and (3) the claimed FLSA violations are different. Resp. at 7–15. In his Reply, Plaintiff contends that whether putative class

---

[3] Defendants provide the Court with supplementary authority from a recent case in the Middle District of Florida. *See generally* Defendants' Notice of Supplemental Authority (ECF No. 139). However, the authority that Defendants point to is an order granting the defendants' motion to *decertify* a collective action and is therefore inapposite to the analysis the Court must conduct at the notice stage. *See* Order, *Alfred H. Thomas v. Waste Pro USA, Inc., et al.*, 8:17-cv-02254-CEH-CPT (M.D. Fla. July 6, 2020), ECF No. 393.

members are similarly situated depends on the employees' job requirements and pay provisions and not on whether the employees worked at the same times or in the same locations. Reply at 3–5.

Courts commonly consider five factors at the conditional certification stage in determining whether members of a class are similarly situated: (1) whether plaintiffs held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether plaintiffs were subjected to the same policies and practices, and whether the policies and practices were established in the same manner and by the same decision maker; and (5) the degree to which the actions constituting the claims violations are similar. *See Didoni v. Columbus Rest., LLC*, 327 F.R.D. 475, 480 (S.D. Fla. 2018). No single factor is dispositive. *Roman v. Burger King Corp.*, No. 15-CV-20455-KMM, 2015 WL 12881153, at *2 (S.D. Fla. June 2, 2015).

First, Plaintiff seeks to conditionally certify a collective action of drivers performing waste disposal services for Waste Pro's clients. Mot. at 13. Defendants argue that Plaintiff and the opt-in plaintiffs' job titles are dissimilar because "their job title and compensation are typically determined by the type of truck they are trained to drive." Resp. at 8. Employees may be similarly situated despite different job titles where they share similar roles and job duties. *See Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1239 (S.D. Ala. 2008) ("If . . . [plaintiffs] are all harmed by the same company pay policies, then it is of no consequence whether their job duties are similar, what kind of work they performed, why they worked off the clock, and the like. What matters is that they did work off the clock, that [defendant] required or permitted them to do so, and that they were not paid statutory overtime[.]").

7

Here, Wright's and the others' declarations do not make a distinction between their job titles and the trucks they were trained to drive; rather, they all refer to themselves and their co-workers simply as "drivers."[4] *See generally* (ECF No. 124-8). Nonetheless, it is clear from the affidavits that waste disposal drivers perform similar job duties regardless of their exact job title. For example, Wright states that he worked as a "non-exempt waste disposal driver" and that his daily duties included the collection, transportation, and disposal of waste for Waste Pro and its clients in the Daytona Beach area. Wright Decl. ¶¶ 2, 4. Wright also explains that, in addition to completing his own assigned route, "Defendants often required me to assist my fellow drivers complete their routes as well. When I was required to assist other drivers complete their routes, I was supposed to receive 'Helper Pay' from Defendants, paid at a variable rate based on how many Drivers I helped." *Id.* ¶¶ 10–11. The other opt-in plaintiffs all describe having the exact same job title and duties. *See generally* (ECF No. 124-8). At this stage of the litigation, this is sufficient to demonstrate that waste disposal drivers share similar job duties, regardless of whether they shared the same job titles. *See generally Longcrier*.

Second, the potential class members work or worked in six (6) different Waste Pro locations in Florida. *See* Mot. at 7; *see generally* (ECF No. 124-8). Defendants are headquartered in Longwood, Florida and have operations in Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee. Mot. at 3. However, Plaintiff seeks only to certify a collective action of waste disposal drivers that worked for Defendants in Florida. *See id.* at 2. Defendants contend that "Plaintiff seeks certification of all drivers across five (5) regions, encompassing 25 divisions and countless different managers and supervisors, regardless

---

[4] References to the individual opt-in plaintiffs' ("Declarants") declarations in ECF No. 124-8 shall be notated as "[Last Name] Decl. ¶¶ __."

of whether or not they are similarly situated." Resp. at 10. Therefore, Defendants argue, "[g]iven the lack of evidence of consistent practices across Waste Pro Florida's 25 division footprint, Plaintiff does not have a reasonable basis to claim there are statewide violations of the FLSA." *Id.* at 11. However, the case to which Defendants cite in support of their argument, *Yoder v. Fla. Farm Bureau*, 446 F. Supp. 3d 956, 961 (N.D. Fla. 2020), is distinguishable from the instant matter. In *Yoder*, if all the declarations were indeed true, then the "different Farm Bureau agents [had] different day-to-day experiences, different approaches, and different expectations." *See Yoder*, 446 F. Supp. 3d at 961. Here, if the declarations are true, the waste disposal driver plaintiffs have similar experiences, expectations, and approaches, regardless of which truck they drive or which region they work in. Thus, Plaintiff has sufficiently demonstrated that drivers in at least three (3) of the five (5) regions in Florida are similarly situated. *See* Waste Pro, Leadership https://www.wasteprousa.com/leadership/ (last visited December 1, 2020); *see also Yoder*, 446 F. Supp. 3d at 961.

Third, some, but not all, of the alleged violations occurred during the same time period—the three (3) years preceding the lawsuit. Resp. at 12–13. According to Wright, his employment with Defendants ran from October 2014 to February 2016.[5] Wright Decl. ¶ 2. Antonio Blake's employment, in contrast, ran from approximately March 2011 to June 2018. Blake Decl. ¶ 2. Yet, Latroy Jackson's dates of employment ran from September 2008 through March 2015. L. Jackson Decl. ¶ 2. Although Plaintiff's and some Declarants' dates of employment are different than others', Plaintiff has demonstrated that his and the other opt-in

---

[5] Defendants dispute this allegation and argue that Plaintiff's termination paperwork shows his employment ended in November 2015. However, as noted above, the Court will not address factual disputes at the notice stage. *See supra* at 6.

9

plaintiffs' claims likely cover the same period of alleged violations of other members of the putative collective action.

Fourth, Wright and the additional opt-in plaintiffs allege that they were subjected to the same policies and practices. *See* Mot. at 12 ("Here, all Drivers were subject to Defendant's day rate policy of paying less than a full-day rate unless a certain number of hours were worked per day, and by including other forms of compensation which invalidates the day rate."); *see generally* (ECF No. 124-8). Defendants assert that "Plaintiff generally concludes that Plaintiff and all other drivers who worked more than 18 months after he left were subject to a common policy" without citing to specific evidence and that "the record evidence suggests that the terms of the various types of drivers' employment were neither established nor implemented by the same policy maker." Resp. at 13. However, this goes to the merits of the claims at issue and is thus premature at this stage of the proceedings. *See Reese*, 2018 WL 1863833, at *4. Further, collective actions do not require a showing at the notice stage that there is a "unified, explicit scheme of FLSA violations," as Plaintiff need only show that the potential plaintiffs "are similarly situated with respect to general workplace policies and practices." *Alequin v. Darden Rests., Inc.*, No. 12-61742-CIV, 2013 WL 3939373, at *6 (S.D. Fla. July 12, 2013). Here, while Plaintiff and the opt-in plaintiffs may have worked under different decisionmakers, all allege being subject to the same policies (i.e. Defendants' alleged day rate policy of paying less than a full-day rate unless a certain number of hours were worked per day). *See* Mot. at 12. Consequently, Plaintiff has sufficiently demonstrated that waste disposal drivers are subject to the same policies and practices.

Finally, the actions constituting the claimed violations appear to be similar. Here, Wright and the other opt-in plaintiffs maintain that they were required to work over forty (40) hours per work week because Defendants require their drivers to assist other drivers on their routes once that

driver is finished with his or her own route for the day. *See generally* Am. Compl.; *see, e.g.*, Wright Decl. ¶¶ 5, 10; Blake Decl. ¶¶ 5, 10; L. Jackson Decl. ¶¶ 5, 10. Additionally, Wright and the others explain that Waste Pro automatically deducted a thirty-minute meal period from their daily hours, even though they regularly worked through their meal period on Defendant's behalf. *See, e.g.*, Wright Decl. ¶ 21; Blake Decl. ¶ 21; L. Jackson Decl. ¶ 21. Finally, Wright and the Declarants also all state that "[a]lthough I did receive *some* overtime when I worked over 40 hours in a workweek, Defendants did not compensate me at the correct rate of at least one and one-half times my regular rate of pay." *See, e.g.*, Wright Decl. ¶ 14; Blake Decl. ¶ 14; L. Jackson Decl. ¶ 14.

Upon weighing all five of these factors, the Court finds that Plaintiff has met his burden in showing that there is a reasonable basis to support his claim that there are other similarly situated employees.

### ii. Other Putative Class Members Will Opt-In

Plaintiff argues that other similarly situated employees will opt-in to this action, noting that one-hundred and six (106) opt-in plaintiffs had already filed their consent to join forms at the time the instant Motion was filed. Mot. 8, 14–17. Defendants do not expressly address Plaintiff's argument as to opt-ins in their Response. *See generally* Resp.

The Court finds that the Declarations of Antonio Blake, Owen Reed, William Frison, Steve Benjamin, Trevor Cobb, Sr., and Dan Jerome Jackson—the currently or most recently employed declarants—support the conclusion that other similarly situated employees will opt-in to this action. *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (granting motion for conditional certification of FLSA collective action where Plaintiff submitted an affidavit of the named plaintiff and one opt-in plaintiff). In

addition to the six (6) employees above, one-hundred and six (106) other individuals filed Notices of Consent to Join as of the filing of the Motion, and each of the Declarants state in their Declarations that "[b]ased on my conversations with other Drivers, I believe that they would be interested to learn that they may recover unpaid overtime from Waste Pro and would want to opt-in to this lawsuit." Blake Decl. ¶ 24; Reed Decl. ¶ 24; Frison Decl. ¶ 24; Benjamin Decl. ¶ 24; Cobb, Sr. Decl. ¶ 24; D. Jackson Decl. ¶ 24. It is therefore reasonable to expect that others will desire to opt-in as well. *See Didoni*, 327 F.R.D. at 480 (finding that affidavits in which plaintiffs "attest to personal knowledge of 30 to 40 individuals who 'will want to participate in this lawsuit'" sufficient to find others are likely to opt in) (internal citation omitted). Accordingly, the Court finds that Plaintiff has met his burden in demonstrating that there are other similarly situated employees who desire to opt-in to this action.

### C. Plaintiff's Proposed Notice Should be Sent to Prospective Class Members.

In his Motion, Plaintiff argues that (1) Plaintiff's proposed notice—and reminder notice—should be texted and emailed to putative class members, as well as posted in a conspicuous location in each of Defendants' locations, with a sixty (60) day notice period; (2) the notice should go to all individuals employed by Defendants within the three (3) years preceding the Motion; (3) putative class members should be permitted to electronically execute their consent to opt into the class; and (4) Defendants should be ordered to provide names and contact information of all putative class members. Mot. at 20–26. In response, Defendants contend that (1) Plaintiff's requests for notice via text, reminder notice, posted notice, and a sixty (60) day notice period should be denied; (2) the three (3) year "look-back period should be calculated from the date notice is sent[;]" and (3) a third-party administrator should be utilized at Plaintiff's expense "to ensure

individuals' privacy rights are protected and that contact information is not used for solicitations by Plaintiff's counsel." Resp. at 15–16.

### i. Method of Notice

Plaintiff argues that he should be permitted to send his proposed notice to putative class members via first-class mail, e-mail, and text message, and that he should also be permitted to post the proposed notice and consent to join "in a conspicuous location in each of Defendants' locations where putative class members are expected to frequent." Mot. at 20–21. Additionally, Plaintiff requests he be allowed to send a reminder notice via e-mail, text message, and U.S. Mail, "at the half-way point in the notice period." *Id.* at 22–23. Defendants respond that (1) Plaintiff's request to send Notice via text should be denied and Defendants should not be required to provide telephone numbers of potential opt-ins; (2) Plaintiff's request for reminder notice should be denied as unnecessary; and (3) posting the notice would be duplicative, unnecessary, and potentially confusing to many drivers who are hourly employees. *See* Resp. at 15–16.

In a recent case in the Middle District of Florida, the magistrate judge recommended to the district court that a plaintiff's request to send notice via text message be denied. *See* Report and Recommendation at 12, *Blandon v. Waste Pro USA, Inc.*, Case No. 6:19-cv-2420-Orl-78GJK (M.D. Fla. Sept. 2, 2020), ECF No. 100 ("As Plaintiff does not demonstrate a need to transmit the notice via text message in addition to notice via first class mail and email, it is recommended that the request to send the notice via text be denied."). Nevertheless, courts within this district have permitted both reminder notice and posted notice. *See Martinez v. DHL Express (USA) Inc.*, No. 15-22505-CIV, 2016 WL 455394, at *9 (S.D. Fla. Feb. 5, 2016) (permitting reminder notice via postcard within thirty (30) days after the notice was approved); *see also Collado v. J. & G. Transport, Inc.*, 2014 WL 5390569, at *6 (S.D. Fla. Oct. 2014) ("[T]he Court orders Defendants

13

to post a copy of the notice (both English and Spanish versions) as approved in this Order, along with the Consent to Become Party Plaintiff attached to the notice, at each of Defendants' locations at which such potential class members are employed.").

Accordingly, the Court will permit Plaintiff to send notice via first-class mail and e-mail, but not via text message since Plaintiff has not "demonstrate[d] a need to transmit the notice via text message in addition to notice via first class mail and email." *See* R&R, *Blandon*, at 12. Further, the court finds it is reasonable to post the notice and consent to join conspicuously throughout Defendants' Florida locations. However, Plaintiff's counsel shall carefully review each consent to join form submitted to ensure that no hourly employees are included in the class. Finally, the Court finds that sending a reminder notice via first-class mail and e-mail thirty (30) days into the notice period is reasonable.

        ii.      <u>Notice Period</u>

Plaintiff contends that a sixty (60) day notice period is appropriate in FLSA cases. Mot. at 22. Defendant disagrees and argues that a forty-five (45) day notice period is sufficient. Resp. at 16. The Court finds that a sixty (60) day notice period is reasonable and sufficient to make putative class members aware of their right to opt-in. *See Robinson v. Sailormen, Inc.*, No. 1:14CV44-MW/GRJ, 2016 WL 11528450, at *8 (N.D. Fla. Nov. 18, 2016) (noting that "a 60-day notice period for potential plaintiffs is common practice under the FLSA"); *see also Robinson v. Ryla Teleservices, Inc.*, No. CA 11-131-KD-C, 2011 WL 6667338, at *4 (S.D. Ala. Dec. 21, 2011) (setting a sixty (60) day notice period).

        iii.     <u>Class Period</u>

Plaintiff maintains that the notice "should go to all individuals who were employed by Defendant during the three-year period preceding the Court's ruling on the instant Motion." Mot.

14

at 23. In response, Defendants argue that any three (3) year look-back period should be calculated from the date notice is sent and not from the date Plaintiff moved for certification. *See* Resp. at 16. Courts within both this district and the Eleventh Circuit agree that the three (3) year period begins on the date the Notice is mailed. *See Gutescu v. Carey Int'l, Inc.*, No. 01-4026-CIV-MARTINEZ, 2003 WL 25586749, at *16–18 (S.D. Fla. July 21, 2003); *Belloso v. Asplundh Tree Expert, Co.*, No. 6:17-CV-2020-ORL-40GJK, 2018 WL 4760671, at *5 (M.D. Fla. Aug. 24, 2018). Accordingly, the three (3) year look-back period shall be calculated from the date notice is sent.[6]

    iv.   Electronic Execution of Consent Forms

Plaintiff requests that putative class members be allowed to execute the consent to join form electronically. Mot. at 23–24. Defendants take no position on this issue in their Response. *See generally* Resp. "When courts allow notice to be distributed via email, they regularly allow opt-in plaintiffs to execute consent forms electronically." *See Kraft v. Freight Handlers, Inc.*, No. 618CV1469ORL41GJK, 2019 WL 3854989, at *6 (M.D. Fla. May 21, 2019), *report and recommendation adopted in part*, 2019 WL 3451479 (M.D. Fla. July 31, 2019); *see also* Fla. Stat.

---

[6] Plaintiff asserts in his declaration that he worked for Defendant until February 2016. Wright Decl. ¶ 2. As the Notice has not yet been mailed, Plaintiff and several other opt-in plaintiffs would fall outside of the class Plaintiff proposes. Plaintiff notes that he "intends to seek determination of the appropriate statute of limitations for the claims of all other Florida drivers who previously opted into the South Carolina Action." Am. Compl. at 3 n.2. Defendant argues in response that any tolling request would "roll back the period of his claim, not move it forward" and that any such request by Plaintiff "would not apply to the members of the collective he proposes as they were not part of the South Carolina action." Resp. at 12–13. However, regardless of the eventual outcome of Plaintiff's tolling efforts, Defendants' argument is insufficient to preclude granting conditional certification, especially when juxtaposed with the Declarants' assertions of Defendants' FLSA violations similar to those alleged by Plaintiff. *See* (ECF No. 124-8). Also, several of the opt-in plaintiffs who provided declarations *do* fall within the time period of the class definition. *See, e.g.*, Blake Decl. ¶ 2; Reed Decl. ¶ 2; Frison Decl. ¶ 2; Benjamin Decl. ¶ 2; Cobb, Sr. Decl. ¶ 2; D. Jackson Decl. ¶ 2.

§ 668.004 ("Unless otherwise provided by law, an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature."). Accordingly, opt-in plaintiffs may execute their consent to join electronically so long as they also provide an electronic signature.

      v.      <u>Limited Discovery</u>

Plaintiff requests that the Court order Defendants to disclose all putative class members' names, addresses, phone numbers, social security numbers, and e-mail addresses. Mot. at 24–25. Defendant, in turn, argues that a third-party administrator should be utilized at Plaintiff's expense in order to protect opt-in plaintiffs' privacy rights. *See* Resp. at 16. Here, because the Court has denied Plaintiff's request to send notice via text message, Defendants shall not be required to produce putative class members' telephone numbers. Additionally, the Court finds Defendants shall not be required to produce social security numbers, which are not necessary to contact opt-in plaintiffs whose addresses have not changed and who have e-mail addresses on file. Finally, the Court declines to grant Defendants' request for a third-party administrator at this time. Defendants may request such relief by motion pursuant to Local Rule 7.1.

## III. CONCLUSION

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiff's Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members (ECF No. 124) is GRANTED IN PART and DENIED IN PART as follows:

    1.    The Court conditionally certifies the following class and the Notice defines the class as: All current and former Waste Disposal Drivers, who were/are employed by Defendants, Waste Pro USA, Inc. and Waste Pro of Florida, Inc., in Florida, and

who were/are paid on a job/day rate basis, within the preceding three (3) years from the date of the mailing of this Notice;

2. Defendants shall provide Plaintiff with the names, last known addresses, and e-mail addresses for everyone in the class within fourteen (14) days of this Order;

3. The Notice shall be in the form set forth in Plaintiff's Exhibit C (ECF No. 124-3) (as modified in paragraph 1 above) and the consent to join shall be in the form set forth in Plaintiff's Exhibit D (ECF No. 124-4), and both shall be sent via first-class mail and e-mail and conspicuously posted in all of Defendants' Florida locations;

4. The Notice period shall be sixty (60) days and reminder Notice shall be sent after (30) days via first-class mail and e-mail; and

5. The putative class members may electronically execute their consent forms.

DONE AND ORDERED in Chambers at Miami, Florida, this  22nd  day of December, 2020.

                                                            K. MICHAEL MOORE
                                                            CHIEF UNITED STATES DISTRICT JUDGE

c: All counsel of record