## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 0:19-cv-62051-KMM

ANTHONY WRIGHT, individually and on
behalf of others similarly situated,

      Plaintiff,

v.

WASTE PRO USA, INC, *et al.*,

      Defendants.

_____/

## **ORDER**

THIS CAUSE came before the Court upon Defendants Waste Pro USA, Inc. and Waste

Pro of Florida, Inc. (collectively, "Waste Pro" or "Defendants") Motion to Decertify Collective

Action. ("Mot.") (ECF No. 235). Named Plaintiff Anthony Wright ("Plaintiff") filed a response

("Resp.") (ECF No. 258), and Defendants filed a reply, ("Reply") (ECF No. 263). The Motion is

now ripe for review.

## I.    BACKGROUND[1]

Defendant Waste Pro USA, Inc. is the parent company of Defendant Waste Pro of Florida,

Inc. *See* Am. Compl. ¶ 21. Plaintiff alleges that Defendants jointly operate a waste disposal

company. *Id.* Plaintiff was a waste disposal driver employed by Defendants from October 1, 2014

until February of 2016. *Id.* ¶¶ 2, 95. Previously, Plaintiff, along with other opt-in plaintiffs, filed

a lawsuit asserting claims for violations of the Fair Labor Standards Act ("FLSA") against

Defendants in the District of South Carolina. *Id.* ¶ 4. On July 25, 2019, the District of South

Carolina dismissed the action for lack of personal jurisdiction. *See generally Wright v. Waste Pro*

---

[1] The facts herein are taken from Plaintiff's Amended Collective Action Complaint, ("Am.
Compl.") (ECF No. 37), and a review of the corresponding record citations and exhibits.

*USA Inc.*, No. 2:17-CV-02654, 2019 WL 3344040 (D.S.C. July 25, 2019).  On August 15, 2019, Plaintiff filed the instant action, bringing the same claims as he did in the District of South Carolina.  *See generally* (ECF No. 1).

In the Amended Complaint, Plaintiff alleges that Defendants violated the overtime provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.* by (1) not paying a true "day rate"[2] for all the hours worked in a given day, and instead "plac[ing] limitations on the number of hours worked before the 'day rate' was paid," ("Half Day Rate Claim") *id.* ¶¶ 2, 34; (2) not compensating Plaintiff and Opt-In Plaintiffs for pre-shift and post-shift duties, ("Off the Clock Claim") *id.* ¶¶ 2, 3, 35, 122–23; (3) automatically deducting a thirty-minute lunch break even if Plaintiff and others similarly situated did not take a lunch break, ("Lunch Deduction Claim") *id.* ¶¶ 2, 3, 36, 124; and (4) "coupl[ing] the day rate with 'other forms of compensation,'" including non-discretionary and discretionary bonuses,[3] ("Bonus Invalidation Claim") *id.* ¶¶ 2, 33, 103, 112.  Consequently, Plaintiff alleges that "Defendants violated the FLSA in both their calculation of the prevailing hourly rate and only paying Plaintiffs 'half-time' for all hours worked over forty (40) in a given workweek." *Id.* ¶ 2.

---

[2]  *See* Day Rates and Job Rates, 29 C.F.R. § 778.112—

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked.  He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

[3]  The alleged non-discretionary bonuses include a $10,000 safety bonus paid out after three years of meeting certain criteria ("$10,000 Bonus"), ("Dolan Dep.") (ECF No. 206-1) at 64:22–65:9, and an annual safety bonus, which was paid yearly based on seniority and drivers' meeting certain criteria over the course of the year ("Annual Safety Bonus"), ("Craigo Dep.") (ECF No. 206-2) at 30:19–31:21.

On June 4, 2020, Plaintiff moved to conditionally certify a collective action and for permission to notify potential class members of the pendency of this action and their right to opt-in. *See generally* (ECF No. 124). On December 22, 2020, the Court granted Plaintiff's Motion, conditionally certifying the following class: "All current and former Waste Disposal Drivers, who were/are employed by Defendants, Waste Pro USA, Inc. and Waste Pro of Florida, Inc., in Florida, and who were/are paid on a job/day rate basis, within the preceding three (3) years from the date of the mailing of this Notice." ("Conditional Certification Order") (ECF No. 148) at 16–17. Notice was provided to individuals who met these criteria, and more than 650 Opt-In Plaintiffs filed notices of consent to join.[4] *See, e.g.*, *id.*; (ECF Nos. 152–53, 155–56, 160–62, 164–66, 168–78, 182, 184, 186, 188, 190, 192).

Now, Defendants move to decertify the collective action.[5] *See generally* Mot.

## II.   LEGAL STANDARD

The FLSA authorizes collective actions against employers for unpaid minimum wage and overtime compensation. 29 U.S.C. § 216(b). Section 216(b) provides that an action "may be maintained . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.* A plaintiff may bring a collective action on behalf of similarly-situated persons subject to the requirements that prospective plaintiffs file a written consent in the court where the action is brought. *Id.*; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). A collective action brought under the FLSA can include only those plaintiffs who affirmatively opt-in to the action by filing their consent in writing. § 216(b).

---

[4] The Court refers to Plaintiff and Opt-In Plaintiffs collectively as "Plaintiffs."

[5] The Parties also filed summary judgment motions along with the instant Motion. *See generally* (ECF Nos. 234, 254). The summary motions are referenced herein, as they raise various issues relevant to the Court's determination of Defendant's Motion here.

Courts in the Eleventh Circuit generally use a two-stage procedure for certifying FLSA collective actions. *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (citation omitted). The first stage—referred to as the notice stage—involves the conditional certification of the class and notice to potential class members upon motion by the plaintiff. *See id.* (quoting *Hipp*, 252 F.3d at 1218). The burden is on the plaintiff to show that there is a "reasonable basis" for the claim that there are other similarly situated employees who desire to opt-in to the case. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259–61 (11th Cir. 2008). The standard by which a court determines whether plaintiffs are similarly situated at this stage is "fairly lenient [], and typically results in 'conditional certification' of a representative class." *Cameron-Grant*, 347 F.3d at 1243 n.2.

However, a class is not officially certified until the Court conducts the second stage analysis. Upon a motion for decertification by the defendant after discovery is complete, the Court re-examines the question of certification. *Id.* Then, the Court determines whether there are similarly situated employees such that the action should proceed to trial as a representative action. *Id.* In doing so, courts consider three factors: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *King v. CVS/Caremark Corp.*, No. 07-21824-CIV, 2008 WL 5973490, at *1 (S.D. Fla. 2008); *see also Theissen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001).

At the second stage, the plaintiff again bears the burden of establishing that he and the members of the collective action are similarly situated—not identically situated, but at a "heavier" and "less lenient" standard than before due to the greater availability of information learned during discovery. *Morgan*, 551 F.3d 1261–62; *Hipp*, 252 F.3d at 1217–18. "[L]ogically the more

4

material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). "[A]s more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated." *Morgan*, 551 F.3d at 1261. Nevertheless, there are no "bright lines in defining similarly." *Id.* If the claimants are not similarly situated, the Court decertifies the class and the opt-in plaintiffs are dismissed without prejudice, while the original plaintiffs proceed to trial on their individual claims. *King*, 2008 WL 5973490, at *7 (citing *Hipp*, 252 F.3d at 1218).

## III.   DISCUSSION

In their Motion, Defendants argue that (1) disparate factual and employment settings between Plaintiff and Opt-In Plaintiffs, including different jobs, geographies, decision-makers, and alleged FLSA violations; (2) the presence of individualized defenses; and (3) fairness and procedural concerns all warrant decertification of the collective action. *See generally* Mot.

Plaintiff concedes in his Response that the Court should "partially decertify the off-the-clock claims and the lunch deduction claims of Plaintiffs in this case," but contends that his remaining claims should not be decertified because they will be subject to common proof, including testimony from Defendants' witnesses and Plaintiffs' pay records.[6] Resp. at 2–3, 7–15. In so arguing, Plaintiff asserts that any differences between Plaintiffs are immaterial. *Id.* at 15–17. Plaintiff also argues that neither Defendants' available defenses, nor fairness and procedural considerations, weigh in favor of decertification. *Id.* at 17–20.

---

[6] Specifically, Plaintiff suggests that the Court decertify and dismiss the Off the Clock and Lunch Deduction claims and create three subclasses "encompassing the remaining claims to streamline these claims for trial[.]" Resp. at 2–3.

In their Reply, Defendants maintain that (1) Plaintiff's failure to address the *Thomas v. Waste Pro USA, Inc.* [7] decertification order "is tantamount to a concession that it is applicable to the instant action"; (2) partial decertification as proposed by Plaintiff is not appropriate; (3) Plaintiff's suggested subclasses "do not cure the inherent dissimilarities between Wright and the members of the collective"; (4) Plaintiff has failed to meet his burden of establishing he and Opt-In Plaintiffs are substantially similar such that the action should proceed to trial as a collective; (5) Plaintiff's "claim that payroll records are dispositive on the issue of whether the members of the collective are similarly situated is misplaced"; and (6) the Motor Carrier Act ("MCA") defense cannot be determined collectively. Reply at 2–11.

The Court addresses the Parties' arguments below.

A.    **The *Thomas* and *Blandon* Decertification Orders**

To begin, the Court finds it prudent to briefly acknowledge and recount two recent decisions from the Middle District of Florida, which—while not binding on the Court—are sufficiently similar both legally and factually to be considered in the Court's analysis of the issues presented in the instant Motion: *Thomas v. Waste Pro USA, Inc.* and *Blandon v. Waste Pro USA, Inc.*, 6:19-cv-02420-WWB-GJK, (ECF No. 197) (M.D. Fla. Dec. 21, 2021) ("*Blandon* R&R"). Defendants cite to *Thomas* at length in their Motion and Reply. *See generally* Mot.; Reply. Defendants also filed a Notice of Supplemental Authority in Support of Defendants' Motion to Decertify Collective Action[8] alerting the Court of the entry of the *Blandon* R&R. ("Not. of Supp. Authority") (ECF No. 279).

_____

[7] No. 8:17-cv-2254-CEH-CPT, (ECF No. 393) (M.D. Fla. July 6, 2020) ("*Thomas* Order").

[8] Plaintiff filed a Response to Defendants' Filing of Supplemental Authority (ECF No. 281) wherein he disagrees that *Blandon* is helpful to the Court since it is a Report and Recommendation ("R&R") from a Magistrate Judge that has not yet been adopted by the District Judge as of the entry of this Order. (ECF No. 281) at 1. Despite Plaintiff's disagreement, the Court nonetheless

Like this case, both *Thomas* and *Blandon* addressed the issue of FLSA collective action decertification and involved the same Defendants here. *See generally Thomas* Order; *Blandon* R&R. The *Thomas* court heard similar claims regarding alleged FLSA violations from employees who rode on the back of Defendants' waste disposal trucks ("Helpers"), *Thomas* Order, at 2; Mot. at 4, while the *Blandon* court heard the same claims present here—only from a class of waste disposal drivers "who are or were employed by Defendant, Waste Pro USA, Inc., in every state **except** for Florida, South Carolina, and North Carolina, and who are or were paid on a job/day rate basis." *Blandon* R&R, at 3 (emphasis added).

Neither the *Thomas* court nor the *Blandon* court found the maintenance of collective actions totaling over 200 opt-in plaintiffs and 96 opt-in plaintiffs,[9] respectively, to be warranted given both plaintiffs' failure to bear the heavier burden of proving (1) they and the members of the conditionally certified class they represented were similarly situated and (2) that proceeding as a collective at trial was both manageable and fair. *Thomas* Order, at 8, 11–12; *Blandon* R&R, at 12, 16, 18. For the reasons below, the Court comes to the same conclusions regarding this collective action of more than 650 Opt-In Plaintiffs.

### B.   Disparate Factual and Employment Settings

Defendants first argue that decertification is warranted because of Plaintiffs' disparate factual and employment settings. Mot. at 5. Specifically, they assert that (1) Plaintiffs did not hold the same jobs; (2) Plaintiffs did not work in the same location or under the same

---

finds the *Blandon* R&R relevant and helpful based on the similarities between the two cases and the Magistrate Judge's thorough analysis.

[9] In the plaintiff's Objection to the Blandon R&R, the plaintiff asserts that there are in fact 142 remaining opt-in plaintiffs. *Blandon v. Waste Pro USA, Inc.*, 6:19-cv-02420-WWB-GJK, (ECF No. 202) (M.D. Fla. Jan. 4, 2022).

decision-makers; (3) Plaintiffs worked during different time periods; and (4) Plaintiffs did not experience the same alleged FLSA violations. *Id.* at 5–25.

Plaintiff argues in response that, aside from his Off the Clock and Lunch Deductions claims, the Court should not decertify his remaining claims. Resp. at 8. Plaintiff proposes, instead, the creation of three subclasses encompassing the remaining claims to streamline them for trial:

1. Plaintiffs who received either a $10,000 safety bonus or an annual safety bonus within the applicable statute of limitations;

2. Plaintiffs who received other forms of compensation in addition to their day rate within the applicable statute of limitations; and

3. Plaintiffs who received a "half-day rate" within the applicable statute of limitations.

*Id.* at 3.

Additionally, Plaintiff asserts that whether Defendants paid the $10,000 Bonus and Annual Safety Bonus upon Plaintiffs' successfully meeting certain criteria was not discretionary, making it "clear that this claim can be pursued using common evidence." *Id.* at 9–12. Next, Plaintiff argues that "[w]hether a Plaintiff received help pay, a weekly safety bonus, roll-off incentive pay, or overload commission pay is immaterial because each would be 'other pay' besides a day rate," making this claim determinable by Plaintiffs' pay records and subject to collective determination. *Id.* at 12–13. Plaintiff also contends that the Half Day Rate claim should not be decertified because it requires "minimal testimony" and pay records—again—will determine this claim. *Id.* at 14–15. And, finally, Plaintiff argues that Defendants' alleged differences between Plaintiffs are nothing but red herrings that do not justify decertification. *Id.* at 15–17.

Defendants maintain in their Reply that (1) partial decertification of certain claims is not appropriate; (2) Plaintiff's proposed subclasses "do not cure the inherent dissimilarities between

Wright and [Opt-In Plaintiffs]"; (3) Plaintiff has not met his burden of proving the members of the collective action are similarly situated; and (4) Plaintiff's reliance on payroll records is misplaced "because the paper discovery and depositions from various Opt-In Plaintiffs reveal that they dispute material facts from their payroll records and relating to their claims," which weighs against collective treatment.  Reply at 3–11.

In determining whether individual plaintiffs have disparate factual and employment settings, courts consider (1) whether plaintiffs' job titles were the same, (2) whether plaintiffs' geographic locations were the same, (3) the time period of the alleged violations, (4) whether the same policies and practices were implemented with respect to the plaintiffs by the same decision-maker and in the same manner, and (5) to what extent the alleged violations are similar between plaintiffs. *Mathis v. Darden Rests.*, 12-61742-CIV, 2014 WL 4428171, at *3 (S.D. Fla. Sept. 1, 2014) (citing *Whineglass v. Smith*, No. 07-12398, 2013 WL 2237841, at *7 (M.D. Fla. May 21, 2013)).  However, plaintiffs are not required to "hold identical positions" under the FLSA. *Morgan*, 551 F.3d at 1261–62.  Nonetheless, "[d]ecertification may be appropriate where 'contradictory testimony indicates that collective treatment for individuals who had worked under different [managers] would demand so much individual inquiry that the purpose behind collective action would be eviscerated.'" *Mathis*, 2014 WL 4428171, at *3 (quoting *Illano v. H&R Block E. Enters.*, No. 09-22531-CV, 2010 WL 9553051 (S.D. Fla. Nov. 4, 2010)).

At this stage of the litigation, Plaintiff bears the heavier and less lenient burden of proving that he and the other members of the collective action are similarly situated both factually and in terms of their employment setting.  *Morgan*, 551 F.3d 1261–62; *Hipp*, 252 F.3d at 1217–18; *Mathis*, 2014 WL 4428171, at *3.  He has not done so here.  To be sure, there are certain facts common to most, if not all, Plaintiffs in this action.  Plaintiffs were (1) paid a day rate at some

point in time during their employment; (2) non-exempt employees under the FLSA; and (3) paid a half-time overtime rate in the same way.  Resp. at 9–10; Reply at 6.  However, this evidence is not so material and pervasive to overcome the clearly dissimilar factual and employment situations of the members of the collective action.

Instead, it is apparent from the record that Plaintiffs—while all waste disposal drivers generally—held a variety of differing titles and roles,[10] which entailed different responsibilities and experiences, and worked in twenty-five (25) different divisions across five (5) regions in the state of Florida for at least fifty-six (56) different decision-makers between 2014 and today.  Mot. at 5–10.  Therefore, even though the FLSA does not require class members to have identical job titles or work during the exact same time period, *Morgan*, 551 F.3d 1262–64, the differences amongst Plaintiffs here are substantial and material and go beyond simple differences in job titles and employment dates.  Rather, these differences result in disparities in how Plaintiffs are or were compensated, whether by a day rate, hourly rate, or salary; in addition to if—and when—they received other forms of compensation, such as bonuses, as well as whether those bonuses were discretionary.  *See* (ECF No. 204-2) at 24:24–26:16 (discussing how compensation varies from division to division based on "market conditions"); *compare id.* at 70:8–16 (testifying that the Coastal Region does not offer—and has never offered—a weekly safety bonus), *with* (ECF No. 132-1) ¶¶ 6–7 (stating that the Southeast Region offered a weekly safety bonus until mid-2017).

For instance, Roll-Off Drivers, Front-end Load Drivers, and Portalet Drivers in Orlando, Sanford, Daytona, Ocala, Lake County, and Crestview became hourly employees in August 2019,

---

[10]  For example, Plaintiffs occupied the following positions: (1) Roll-Over Drivers, (2) Front-end Load Drivers, (3) Portalet Drivers, (4) Grapple or Clamshell Drivers, (5) Residential Rear-load Drivers, (6) Residential Automatic Side-load Drivers, (7) Container Delivery Drivers, or (8) Swing Drivers.  Mot. at 5.

while Roll-Off Drivers and Front-end Load Drivers in other divisions became hourly employees in late 2020 or early 2021.  Mot. at 5–6.  Some Opt-In Plaintiffs were paid a day rate at the start of their employment and transitioned to an hourly rate or salary, and others were never paid a day rate at all.  *Id.* at 6 (noting that Opt-in Plaintiff Bryan Empringham was paid a salary from September 2015 through the end of his employment, while Opt-in Plaintiff Urundi Bruten only ever received an hourly rate).

Further, as it pertains to payment of Annual Safety Bonuses, $10,000 Bonuses, and other forms of compensation, there are underlying questions of whether (1) such bonuses were discretionary or non-discretionary, and (2) the payment of such bonuses varied from division to division or was a company-wide policy.  Without reaching the merits of these questions, the Court notes that Plaintiff never once received **either** the $10,000 Bonus or the Annual Safety Bonus, which Plaintiff alleges are non-discretionary.[11]  Reply at 7; *see generally* (ECF Nos. 258-3, 258-4) (listing Plaintiffs who received the $10,000 Bonus and Annual Safety Bonus).  Consequently, although the Court previously found that Plaintiff successfully alleged this claim in his Amended Complaint, (ECF No. 252), upon further review of the record, Plaintiff—as the sole Named Plaintiff—did not suffer a concrete injury and does not have standing to bring this claim, much less represent a class of supposedly similarly situated Plaintiffs.[12]  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("[U]nder Article III, an injury in law is not an injury in fact.  Only those plaintiffs who have been **concretely harmed** by a defendant's statutory violation

---

[11]  At least 100 Opt-In Plaintiffs never received any bonuses over the course of their employment. Mot. at 22.

[12]  The Court declines to reach the merits of the Bonus Invalidation claim as it pertains to the $10,000 Bonus and Annual Safety Bonus, which has been fully briefed in the Parties' motions for summary judgment but on a class-wide basis, here.  This issue is properly left for the appropriate courts' determination if Opt-In Plaintiffs elect to pursue their own individual claims.

may sue that private defendant over that violation in federal court." (emphasis in original)); *Hipp*, 252 F.3d at 1218–19 ("For an opt-in class to be created under § 216(b), a named plaintiff must be suing on behalf of himself and other "similarly situated" employees.  Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1094 (11th Cir. 1996) (internal quotations omitted))).

Moreover, Plaintiff's assertion that payroll records can be used to collectively establish liability is unpersuasive given Defendants' numerous citations to the record in which various Opt-In Plaintiffs dispute their pay records or contradict themselves in written discovery and deposition testimony.  *See* Reply at 9–11.  This lack of uniformity is compounded by the fact that different divisions implemented different policies over different time periods.  *See Thomas* Order, at 7–8 (noting that "the Opt-In Plaintiffs not only worked at different locations, but they also worked under different decision-makers who implemented policies differently[,]" which "demonstrates that different divisions made independent decisions regarding Opt-In Plaintiffs' pay policies and did not operate in lockstep in carrying out overtime policies"); *see also* (ECF No. 131-1) ¶¶ 4–25; (ECF No.132-1) ¶¶ 3–4; (ECF No. 130-1) ¶ 3 (indicating that each region operates autonomously, and that every division within a given region also operates independently and adopts its own policies and procedures).  For example, only one (1) region out of five (5) had a weekly safety bonus program, and that program was discontinued in 2017.  (ECF No. 132-1) ¶¶ 6–7.

The differing compensation policies from region to region and division to division—and even from position to position within a division—necessarily requires individualized inquiries into

how each Opt-In Plaintiff was compensated based on their particular (1) job title, (2) region and division, and (3) period of employment.

As an illustration of this, Opt-in Plaintiff Charles Rackard was employed as a Roll-Off Driver in Sanford and received a day rate from April 2019 until July 2019 when he became an hourly employee, but never received a bonus of any sort.  Mot. 6, 23 (citing (ECF No. 222-1) ¶ 15).  Opt-in Plaintiff Alberto Sanchez, on the other hand, was employed as a Front-load Driver in Orlando and was also paid a day rate for some period of time before switching to an hourly rate. *See id.* at 6 (citing (ECF No. 222-1) ¶ 16).  However, he received bonuses of varying amounts in 2016, 2017, 2018, and 2019—it is unclear from the record exactly what sort of bonus he received— but not a $10,000 Bonus.  *See generally* (ECF No. 258-3); (ECF No. 258-4) at 5.  The above-stated comparison is indicative of how the distinct factual and employment settings of the members of the collective action weigh heavily against finding that the putative class is similarly situated. Accordingly, upon consideration of the relevant factors above, *Mathis*, 2014 WL 4428171, at *3, Plaintiff has not met his burden of showing that he is similarly situated to the members of the collective action.  *Morgan*, 551 F.3d 1261–62; *Hipp*, 252 F.3d at 1217–18.

What is more, Plaintiff's concession that his Off the Clock and Lunch Deductions claims should be decertified and his proposal to create subclasses lends further support to the Court's conclusion that Plaintiffs are not similarly situated.  Otherwise, the dismissal of two claims and the subdivision of the collective action into three smaller groups would not be necessary.  In addition, Defendants' argument that Plaintiff's suggested dismissal of **claims** rather than **class members** is improper is well taken.  *See* Reply at 3–5; *see also Dang v. Inspection Depot, Inc.*, 2015 WL 11598702, at *3 (S.D. Fla. Nov. 6, 2015) (dismissing certain plaintiffs from the collective action at the second stage); *Tanner v. TPUSA, Inc.*, 2015 WL 6940118, *8 (M.D. Ga.

Nov. 9, 2015) ("In general, plaintiffs who are not similarly situated—for instance, plaintiffs who did not allege suffering under either unlawful practice—could be dismissed while keeping intact a partial class." (citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 586 (6th Cir. 2009), *abrogated by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016))).

Here, Plaintiff provides the Court with no suggestion as to how many Plaintiffs would be affected by or dismissed as a result of the partial decertification of the Off the Clock and Lunch Deduction claims. *See generally* Resp. It is equally unclear how many Plaintiffs would be included in each of Plaintiff's suggested subclasses—other than the Half-Day Rate subclass, which would encompass just twenty-seven (27) Opt-In Plaintiffs of the 677-member collective action. *Id.* at 2. Plaintiff's argument that "the fact that only twenty-seven (27) Plaintiffs, including Wright, suffered a half-day rate violation actually supports **<u>denial</u>** of Defendants' decertification request" is not compelling because Plaintiff concedes that 650 Plaintiffs—or 96% of the putative class—would not be included in this subclass and are not substantially similar. *Id.* at 15 (emphasis in original).

Considered together, Plaintiffs' disparate factual and employment settings weigh in favor of decertification.

## C.    Individual Defenses

Defendants next argue that the presence of numerous individualized defenses, including (1) the MCA exemption; (2) contradictory evidence and individual impeachment; (3) the lack of overtime hours by certain Plaintiffs; and (4) that certain Plaintiffs were only ever hourly or salaried employees during the relevant limitations period, weigh in favor of decertification. Mot. at 25–30.

Plaintiff counters that the MCA exemption defense can be determined collectively, and Defendants' "other alleged 'defenses' do not warrant decertification" because they relate to

14

individual Plaintiffs' credibility, which is a matter for the factfinder, or pertain only to a small number of Plaintiffs, which goes to damages rather than liability.  Resp. at 17–19.

In reply, Defendants maintain that (1) individualized inquiries will be required to determine liability where some Plaintiffs received discretionary bonuses or other compensation that were unnecessarily included in the regular rate, Reply at 8, and (2) the MCA exemption cannot be determined collectively because a defense under the MCA can only be raised against certain Opt-In Plaintiffs, *id.* at 11.

The Court's decertification analysis requires consideration of any individualized defenses. *See Anderson*, 488 F.3d at 953.  The availability of individualized defenses can make "a one-size-fits-all determination . . . impossible."  *See Knott v. Dollar Tree Stores, Inc.*, 897 F. Supp. 2d 1230, 1241 (N.D. Ala. Sept. 19, 2012); *Anderson*, 488 F.3d at 954 n.8 ("The availability of defenses to some but not all of the putative class members clearly poses significant case management concerns." (citation and quotation omitted)).

To begin, the Court finds the order decertifying the collective action in *Thomas* to be instructive.  There, the defendants relied upon the same defenses asserted in the instant case. *Thomas* Order, at 9–11 (noting the defendants' alleged defenses that "certain Opt-In Plaintiffs did not work overtime hours, that a Motor Carrier Act exemption applies to certain Opt-In Plaintiffs, that certain employees were hourly employees not paid a day rate, that WP USA did not employ Opt-In Plaintiffs, and contradictory evidence and impeachment evidence is available as to certain Opt-In Plaintiffs").  The *Thomas* court found that these individualized defenses went to the defendants' liability for unpaid overtime—not damages.  *Id.* at 10–11 ("Whether or not an opt-in plaintiff has worked overtime hours 'creates a disparate factual setting among the individual Plaintiffs as the issue of liability is not susceptible to common proof.'" (citing *Rindfleisch v.*

*Gentiva Health Servs., Inc.*, 22 F. Supp. 3d 1295, 1303 (N.D. Ga. Apr. 18, 2014))).  Further, the court concluded that "no volume of evidence exist[ed] showing that the Opt-In Plaintiffs were treated in the same manner across the board," rather the evidence showed that "different regions and divisions treated the Opt-In Plaintiffs differently, and that the Opt-In Plaintiffs were paid a day rate, or not paid a day rate, based on the specific facts regarding his or her work."  *Id.* at 10. Here, the Court reaches the same conclusions.

Notably, all of the opt-in plaintiffs in *Thomas* held the same position: Helpers.  *Id.* at 2.  In the case at bar, Plaintiffs hold at least one of eight (8) different positions, *supra* n.9, across the state of Florida which not only creates disparate factual and employment settings, but also provides Defendants with individualized defenses against some but not all Opt-In Plaintiffs.  For example, in some divisions, Plaintiffs "drive trucks that cross state lines into Georgia or Alabama to collect or dispose of solid waste."  Mot. at 26 (citing (ECF No. 222-1) ¶ 37).  Other Plaintiffs collect recyclable materials that are delivered across state lines or internationally, even if they themselves do not cross state lines.  *Id.* at 26–27.

The determination of whether the MCA exemption defense applies to certain Plaintiffs would require an examination into whether an individual Opt-In Plaintiff (1) traveled across state lines in the course of their employment, or (2) collected goods that were transported in interstate commerce—or, in some instances, both—and cannot be done collectively.  *See* 49 U.S.C. §§ 13102(14), 13501(1)(A); 29 C.F.R. § 782.2(b)(2); *Mena v. McArthur Dairy, LLC*, 2009 WL 10666944, at *7 (S.D. Fla. May 12, 2009), *aff'd* 352 F. App'x. 303 (11th Cir. 2009) (finding that a plaintiff was exempt from the FLSA overtime provisions under the motor carrier exemption because the defendant's products that the plaintiff delivered "were bound, at the time they were delivered, for a destination outside of Florida").  Moreover, whether certain Plaintiffs (1) worked

overtime hours, (2) were ever paid at a day rate during their employment, or (3) received discretionary bonuses or other compensation that were unnecessarily included in the regular rate "plainly relate[] to liability and [are] not simply a matter of damages." *Thomas* Order, at 11.

Thus, the availability of individualized defenses also weighs in favor of decertification.

### D.      Fairness and Procedural Considerations

Finally, Defendants contend that "the individualized inquiries resulting from different factual and employment settings, as well as specific defenses that apply to some, but not all, Plaintiffs, render this case unmanageable and make proceeding collectively impracticable." Mot. at 30.  Defendants also argue that a collective trial would be too complex "[g]iven that each of the alleged FLSA violations turns on the time period, division, type of driver, and discretion of the local decision maker." *Id.*

Plaintiff argues in his Response that (1) no fairness or procedural concerns militate toward decertification, and (2) Plaintiff's "proposed streamlining of this action by partially decertifying the off-the-clock and lunch deduction claims and proposed sub-class definitions will help organize the remaining claims and allow the jury to easily decide liability." Resp. at 20.

In ruling on a motion for decertification, the district court should consider the primary objectives of a collective action under the FLSA: (1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct. *Morgan*, 551 F.3d at 1264 (citing *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989)).  The court must also evaluate, however, "whether it can coherently manage the class in a manner that will not prejudice any party." *Roberson v. Rest. Delivery Developers, LLC,* 320 F. Supp. 3d 1309, 1320 (M.D. Fla. 2018) (citing *Briggins v. Elwood TRI, Inc.*, 882 F. Supp. 2d 1256, 1263 (N.D. Ala. 2012)).  The Eleventh Circuit has noted

that "the more similar the employees, the less likely that collectively litigating [a fact-specific defense] can be unfair." *Morgan*, 551 F.3d at 1264.

Here, as the Court has previously discussed, the differences in Plaintiffs' factual and employment settings and the existence of numerous individualized defenses would render a collective trial untenable. The jury would be required to engage in highly individualized inquiries such that maintenance of the collective would no longer align with the stated objectives of the FLSA. *Roberson*, 320 F. Supp. 3d at 1320–21 ("The large number of opt-in Plaintiffs asserting highly-individualized claims supports that it is more efficient to adjudicate their claims individually."); *Thomas* Order, at 11 (concluding that proceeding as a collective was both unmanageable and unfair due to the burden imposed on the court and the parties). Accordingly, "[u]nder [these] circumstances, a collective action no longer poses benefits in terms of manageability or fairness and is not preferable to individual actions spread across the appropriate federal venues [statewide]." *Mathis*, 2014 WL 4428171, at *5.

Therefore, due to fairness and procedural considerations, as well as the reasons stated above, the collective action must be decertified.

## IV.    CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that:

1. Defendants' Motion to Decertify Collective Action (ECF No. 235) is GRANTED;

2. The claims of all Opt-In Plaintiffs are hereby DISMISSED WITHOUT PREJUDICE. The applicable statute of limitations is tolled for twenty-one (21) days following the issuance of this Order;

3.  This action shall proceed on Plaintiff Anthony Wright's individual claims.  Plaintiff's Motion for Partial Summary Judgment (ECF No. 234) and Motion to Strike Affidavits and Corresponding Statement of Facts in Support of Defendants' Response to Plaintiff's Motion for Partial Summary Judgment (ECF No. 266), and Defendants' Motion for Summary Judgment (ECF No. 254), which pertain to the now decertified collective action, are DENIED AS MOOT; and

4.  This case is removed from the January 31, 2022 trial docket, and the final pretrial conference scheduled for January 18, 2022 and the calendar call scheduled for January 27, 2022 are cancelled.  The Parties shall file a Joint Scheduling Report within fourteen (14) days of this Order.  The Parties may refile summary judgment motions tailored to Plaintiff's individual claims within twenty-one (21) days of the issuance of an Amended Scheduling Order.

DONE AND ORDERED in Chambers at Miami, Florida, this _11th_ day of January, 2022.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c:      All counsel of record